RANCHLAND AUTO, INC., A CORPORATION, APPELLEE, V. DONALD J. CLEVELAND, APPELLANT.

199 N. W. 2d 702

Filed July 28, 1972. No. 38172.

Kirby & Spittler, for appellant.

Cronin & Hannon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

Ranchland sold Cleveland a new 1969 Dodge Polara for $4,449.15, Ranchland agreeing to take $1,250 cash and Cleveland's 1968 Dodge Polara, if repaired to its previous condition from damage resulting from an accident. It was so repaired, with no dispute as to repair price or proper restoration to its previous condition. The dispute here arises because neither Ranchland nor Cleveland, after due notice from the artisan lien holder who performed the repair work, reclaimed the car for the repair bill of $1,006.64 and it was sold at foreclosure auction. In a jury trial, Ranchland recovered a judgment for $3,199.15. On appeal, we reverse the judgment and remand the cause with directions to enter a judgment for Ranchland for the amount of the repair bill in the sum of $1,006.64.

Cleveland assigns error in the failure of the trial court to instruct the jury as to the measure of damages. The transcript reveals a failure to instruct on this issue. It is the duty of the court, on its own motion, to instruct on all material issues raised by the pleadings and evidence. The jury should have been told the manner in which the damages sustained by the plaintiff are to be measured and arrived at. See, Numon v. Stevens, 162 Neb. 339, 76 N. W. 2d 232; Gallagher v. Vogel, 157 Neb. 670, 61 N. W. 2d 245; 17A C. J. S., Contracts, § 641, p. 1290.

Under the law and the undisputed facts, Ranchland is entitled to judgment for the repair bill in the sum of $1,006.64 only. The written contract of sale, signed by the parties, consisted of figure notations on an invoice form, setting up the 1969 Polara price, the cash pay-

ment, and the trade-in allowance of the damaged 1968 Polara. There is no dispute as to these figures. This written memorandum contains no reference to the repair of the trade-in or any duties incident thereto. Parol evidence and the parties' conduct in performing the contract are therefore admissible to explain and show the true nature of the transaction. Ely Constr. Co. v. S & S Corp., 184 Neb. 59, 165 N. W. 2d 562; Fitzsimons v. Frey, 153 Neb. 124, 43 N. W. 2d 531; Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448; Muller Enterprises, Inc. v. Gerber, 178 Neb. 463, 133 N. W. 2d 913; Cook v. Wilkie, 181 Neb. 596, 150 N. W. 2d 124.

On March 12, 1969, a few days after the contract or memorandum was signed, Cleveland came to the Ranchland office. He paid the $1,250, gave the title to the 1968 Polara to Ranchland, assigned it to Ranchland, brought his trailer hitch, and put his license plates on the 1969 Polara. Buzeyn, representing Ranchland throughout, gave the title of the 1969 Polara to Cleveland. The damaged Polara, to Buzeyn's knowledge, was in Fritz's Body Shop at that time. There was a misunderstanding as to Cleveland's collision insurance. Cleveland thought it covered the repair bill but it did not. Buzeyn was aware of this problem and insisted Cleveland straighten it out. Buzeyn visited the body shop, was aware of the progress of the repairs, and instructed the body shop to paint the Polara two-tone. He had the title, had received the cash, and listed and used the 1968 Polara as security for a loan with his bank. In the fall of 1970 Fritz's Body Shop, after demand and notice to both Ranchland and Cleveland, foreclosed its lien and sold the 1968 Polara.

From these undisputed facts it is clear from the conduct of the parties before any dispute arose, that Ranchland had ownership and the complete power and control over the title and possession of the 1968 Polara. It exercised dominion and control, directing the changes in the repair work, and using it for loan purposes. It

assumed all the normal incidents, duties, and responsibilities of ownership. It is true that Cleveland had a personal obligation and commitment to pay the repair bill. But, in the performance of the contract, when he assigned and delivered the title and placed the possessory control flowing from ownership in Buzeyn, and Buzeyn accepted the transfer with full knowledge of the facts, and affirmed the mutual transfer of ownership by delivery of title and possession of the new 1969 Polara, we must assume both parties accepted and assumed the normal benefits and risks of loss incident to such ownership. With knowledge of all the facts the parties themselves mutually transferred the title to the vehicles and by their conduct in partly performing their contract effectively modified and changed their original obligations to protect their respective properties from loss resulting from the normal incidents of ownership. Ranchland cannot create a lien for one purpose and at the same time deny its obligation to protect its own property from another lien that it knew existed. We therefore hold that Cleveland's liability is limited to his personal promissory obligation to pay the repair bill, the amount of which, $1,006.64, is not in dispute.

The measure of damages in the case of a breach of a promissory obligation under a contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of which it has entailed. Numon v. Stevens, *supra;* Gallagher v. Vogel, *supra.*

In the light of our decision on the undisputed facts, it is not necessary to discuss other issues presented. The judgment of the district court is reversed and the cause remanded with directions to enter judgment for the plaintiff in the sum of $1,006.64, each party to pay its own costs.

REVERSED AND REMANDED WITH DIRECTIONS.