PEOPLE *v.* KUHN.

1. CRIMINAL LAW—"MOTIVE" AND "INTENT"—DISTINGUISHED.
   "Motive" and "intent" are not synonymous terms; motive
   being an inducement for doing some act, while the resolve
   to commit an act constitutes the intent.[1]

2. HOMICIDE—IF INTENT SHOWN MOTIVE NOT ESSENTIAL.
   In a prosecution for murder, if the intent appears the
   motive inducing the design may be shown, but, if not
   shown, the design remains, and, as the intent governs,
   the inducement creating the intent is not essential; motive
   being a relevant but not an essential fact to prove the
   crime.[2]

3. SAME—MOTIVE—QUESTION FOR JURY.
   Evidence of motive, although meager, was properly sub-
   mitted to the jury on the question of intent.[3]

4. SAME—POISON—PROOF OF PURCHASE NOT NECESSARY.
   In a prosecution for murder by administering strychnine,
   absence of proof that defendant purchased strychnine
   would not nullify conviction, although the law requires
   a record to be kept of all such purchases.[4]

5. SAME—EVIDENCE—QUESTION FOR JURY.
   Testimony by eyewitnesses that deceased's death was
   peaceful and without convulsions, where opposed by un-
   controverted medical evidence that death caused by
   strychnine under the circumstances of this case must of
   necessity have been preceded by convulsions, *held,* to pre-
   sent an issue of fact for the jury.[5]

6. SAME—CONCLUSION—QUALIFICATION OF WITNESS—APPEAL AND
   ERROR.
   Where a chemist testified that he found .26 of a grain of
   strychnine in one-half of the organs of deceased, his
   testimony, over objection as to his qualifications, that
   there was an equal amount in the other half was not

[1]Intent, 33 C. J. p. 168; Motive, 28 Cyc. p. 20. [2]Homicide, 30
C. J. §§ 345, 406; [3]Id., 30 C. J. § 572; [4]Id., 30 C. J. § 540; [5]Id.,
30 C. J. § 570.

prejudicial, in view of other uncontroverted medical testimony showing that said statement is correct.[6]

7. SAME—POISON—EVIDENCE—SUFFICIENCY.
The finding of the jury that deceased's death was caused by strychnine poison, *held*, supported by the record.[7]

8. SAME—EVIDENCE—WEIGHT OF EVIDENCE.
The finding of the jury that defendant administered strychnine poison to deceased, *held*, against the weight of the evidence.[8]

Error to Hillsdale; Chester (Guy M.), J. Submitted June 11, 1925. (Docket No. 82.) Decided October 1, 1925.

Marjorie Kuhn was convicted of murder in the first degree, and sentenced to imprisonment for life in the Detroit house of correction. Reversed.

*Victor Hawkins* and *Merton Fitzpatrick*, for appellant.

*Andrew B. Dougherty*, Attorney General, *J. Culver Riggs*, Prosecuting Attorney, and *Paul W. Chase*, Assistant Prosecuting Attorney, for the people.

WIEST, J. Defendant was convicted of murder in the first degree, under a charge of having administered strychnine poison to Zelon Lake at the village of Jonesville, Hillsdale county, on the 26th day of December, 1922, and she prosecutes review by writ of error. Defendant is in middle life, passed at times as the wife of Zelon Lake, although they were not married and, at the time of the alleged killing, was on a holiday trip with him at the home of her niece in the village of Jonesville. It is the theory of the prosecution that defendant administered the strychnine poison in a dish of oatmeal or a cup of coffee she carried to the deceased in a bedroom shortly

[6]Criminal Law, 17 C. J. § 3664; Homicide, 30 C. J. § 704; [7]Homicide, 30 C. J. § 531; [8]Id., 30 C. J. § 540.

after the noon meal.    Mr. Lake did not partake of the noon meal but, shortly thereafter, complained of not feeling well and retired to a bedroom.    His death occurred about 4 o'clock in the afternoon.    So far as the evidence discloses the relations between defendant and Mr. Lake were agreeable, and they were making Christmas time visits to his mother in Marshall and to her relatives.

It is claimed no motive was shown.    Although sometimes confused, motive and intent are not synonymous terms.    A motive is an inducement for doing some act; it gives birth to a purpose.    The resolve to commit an act constitutes the intent.    The motive inducing the resolve, while illuminative of the intent, is necessarily merged therein and is not an essential element in proving commission of crime. The essential element of intent is not at all dependent upon motive.    If the intent appears the motive inducing the design may be shown but if not shown the design remains and, as the intent governs, the inducement creating the intent is not essential.    A motive is a relevant but not an essential fact in proof of murder.  . It is true it exists whether disclosed or not.    If disclosed it may aid the prosecution, but if not disclosed, or only faintly discernible, its absence or hidden character does not abort the charge if the intent is established.    The evidence of motive was meager but what there was of it went to the jury, and properly so, on the question of intent.

It is said the law requires a record to be kept of all purchases of strychnine and the prosecution failed to show any purchase by defendant.    True, but while this might have been, and probably was urged to the jury, it presents no question of law.    Proof of purchase by defendant might have strengthened the prosecution, but the absence of such proof does not nullify the conviction.    The prosecution called all eyewitnesses of the death bed scene and they gave

testimony that Mr. Lake's death was peaceful and without convulsions. The jury evidently found that strychnine was given in oatmeal or coffee at least two hours before death, caused death, and notwithstanding the testimony of all eyewitnesses, death was preceded by convulsions. A fatal dose of strychnine, if it does not cause immediate death, produces severe convulsions ending in death. If the poison found in the organs of the body was given about two hours before death the doctors agree there must of necessity have been convulsions. This uncontroverted medical evidence was directly opposed to the testimony of the eyewitnesses and presented an issue of fact for the jury. The medical evidence was also to the effect that the accepted minimum fatal dose of strychnine is about one-half grain, and may be slightly less. It is quick in action, goes to all parts of the body, because it is taken up from the stomach and intestines and carried through the blood stream everywhere the blood circulates, and a fatal dose causes death from almost immediately to three hours, though it may be extended to six or seven hours, and, if an analysis of a well sampled one-half of the stomach of a dead body, one-half of the liver and one-half of the kidneys disclosed 26/100 of a grain of strychnine there would be sufficient in the system to cause death, for there would be approximately the same amount in the other half of the organs mentioned, and if those organs contained 52/100 of a grain of strychnine it would of necessity have produced convulsions and was sufficient to have caused death.

Charles L. Bliss, a chemist and toxicologist, made a chemical analysis of a well sampled half of the stomach, liver and kidneys, and found therein 26/100 of a grain of strychnine and, over objection, was permitted to say there was, of necessity, an equal amount in the unexamined portions of the same organs. His qualification to give such conclusion is

attacked.    The qualified medical testimony relative
to the nature of strychnine and the method of its
operation in a human body through the circulatory
system rendered his conclusion true beyond question.
His testimony was supplemented by uncontroverted
competent medical testimony showing the correctness
of his statement and, without passing upon the ques-
tion of his qualifications, we can discover no harm
done defendant by his statement of a fact conclusively
established by medical expert testimony.    This record
fully supports the finding that the death of Mr. Lake
was caused by strychnine poison.

Some little time after death the body was exhumed,
the brain sectioned, the spinal cord examined, the
heart sectioned and a complete examination made to
determine whether there was any cause of death other
than by strychnine poison, and none found.

It is insisted the evidence failed to show death was
caused by crime.    This has led us to make a critical
examination of the evidence, in response to the duty
placed upon us by the statute, relative to review, in
this court, of the denial of the motion in the circuit
for a new trial on the ground the verdict is against
the weight of the evidence.

This involves only the question of whether the find-
ing that the strychnine was given Mr. Lake by de-
fendant was against the weight of the evidence.
Upon this question we need to consider the relations
existing between defendant and Mr. Lake, and the
circumstances surrounding his death.    Mr. Lake and
defendant were residents of the city of Jackson.    His
mother and a sister lived in the city of Marshall and,
in company with defendant, he visited them two days
before his death and appeared in good health.    From
Marshall Mr. Lake and defendant went to the village
of Jonesville to the home of a niece of defendant,
reaching there a little after midnight, visited until
near daybreak, when they retired.    The niece had

children and a Christmas tree was prepared for them and presents contributed by Mr. Lake and defendant. They remained at the home of the niece Christmas night, occupying the same room and bed. The day following Mr. Lake was up and around the house but complained of not feeling well, and, shortly after the noon meal, retired to a bedroom. Some time between 2 and 3 o'clock that afternoon defendant took him a dish of oatmeal and a cup of coffee, and about 4 o'clock he died. The night following his death defendant drove to the city of Jackson, had some repairs made to the automobile, claimed to be the wife of Mr. Lake and had the cost charged to him, and, again before the funeral, went there and made inquiry of the secretary of the Moose lodge about the insurance carried by Mr. Lake, found he was in arrears and offered to pay without divulging the fact he was dead. Mr. Lake held only a burial benefit in the order of Moose. His property consisted of an old Ford automobile and a violin. He had $50 due him where he worked. The record is barren of any trouble between Mr. Lake and defendant. At the time of his death he and defendant were on a holiday visiting trip to his and her relatives. At this point it is proper to observe the want of motive leading defendant to form the design to commit murder. It seems incredible that a desire to get Mr. Lake's worldly possessions induced defendant to kill him. The burial expenses probably exceeded the value of the old automobile and violin. Any possible theory of hope of pecuniary benefit from the estate of Mr. Lake is punctured by the fact that defendant was not his wife and, therefore, could not take any part thereof. She appears to have known of his insurance in the order of Moose and, in the absence of anything to the contrary, it is but fair to assume she was aware it was no more than a burial benefit.

We have not overlooked the trouble between de-

fendant and Mr. Lake's relatives over the automobile after Mr. Lake's death, the claim she was his widow, collection of his small back pay, the asserted tubercular suffering of Mr. Lake, ending in his death, and all else tending to show the commission of the crime charged. True, defendant had opportunity to administer the poison, but did she give it? Upon consideration of all the evidence we are persuaded the verdict of the jury, finding defendant administered the strychnine to Mr. Lake, was against the weight of the evidence, and a new trial should have been granted.

The conviction and judgment are reversed, a new trial granted, and defendant remanded to the custody of the sheriff of Hillsdale county, to await such further proceedings as may be proper.

McDONALD, C. J., and BIRD, SHARPE, STEERE, and FELLOWS, JJ., concurred. CLARK and MOORE, JJ., concurred in the result.