PEOPLE *v*. RING.

1. TRIAL—EXCLUSION OF WITNESSES FROM COURTROOM—ABUSE OF DISCRETION.

Denial of defendant's request for exclusion of witnesses from courtroom during trial on charge of indecent and obscene exposure of his person and that of others *held,* not an abuse of discretion (Act No. 328, Pub. Acts 1931, § 335).

2. EVIDENCE—NUDIST CAMP—INDECENT OR OBSCENE EXPOSURE.

Testimony as to what appeared to be improper conduct of a man and woman on premises operated as a nudist camp but not in presence of defendant operator thereof *held,* admissible as influencing jury's conception of designedly making ''open or indecent exposure of his or her person or of the person of another'' by showing the purpose and result of such exposure (Act No. 328, Pub. Acts 1931, § 335).

3. SEARCHES AND SEIZURES—CURTILAGE—OPEN LANDS.

The curtilage is immune to unreasonable search and seizure and while the term is not defined with exactitude there is drawn a distinction between the right of peace officers to invade one's house and one's lands as the Constitution does not guarantee the privacy of open lands (U. S. Const. 4th Am., Michigan Const. of 1908, art. 2, § 10).

4. CRIMINAL LAW—CHARGE TO JURY—TRIAL—STATUTES—EVIDENCE.

Office of charge to jury is to apprise jury of the questions involved and rules of law applicable in the light of the statute and testimony.

5. OBSCENITY—NUDIST CAMP.

Evidence presented under charge of indecent or obscene exposure of one's own person or of the person of another *held,* sufficient to sustain conviction of defendant who operated a camp for nudists in a clearing of about three acres surrounded by second growth scrub oak about a mile and a half from a trunkline highway regardless of presence of persons whose sense of decency, propriety and morality is not offended (Act No. 328, Pub. Acts 1931, § 335).

6. Same—Statutes.

It is unnecessary that the crime of designedly making an open and indecent or obscene exposure of one's person or that of others be particularly well defined (Act No. 328, Pub. Acts 1931, § 335).

Appeal from Allegan; Miles (Fred T.), J. Submitted April 12, 1934. (Docket No. 156, Calendar No. 37,686.) Decided June 4, 1934.

Fred L. Ring was convicted of designedly making an open, indecent and obscene exposure of his person and of the persons of others in violation of Act No. 328, Pub. Acts 1931, § 335. Affirmed.

*Clare E. Hoffman,* for appellant.

*Patrick H. O'Brien,* Attorney General, and *Welborne S. Luna,* Prosecuting Attorney, for the people.

Bushnell, J. Defendant, the proprietor, and operator of a nudist colony, described as the Sun Sports League camp, was convicted of a violation of section 335, of the penal code, Act No. 328, Pub. Acts 1931.

The section reads:

"Any man or woman, not being married to each other, who shall lewdly and lasciviously associate and cohabit together, and any man or woman, married or unmarried, who shall be guilty of open and gross lewdness and lascivious behavior, or who shall designedly make any open or indecent or obscene exposure of his or her person, or of the person of another, shall be guilty of a misdemeanor, punishable by imprisonment in the county jail not more than one year, or by fine of not more than five hundred dollars. No prosecution shall be commenced under this section after one year from the time of committing the offense."

The camp, operated near State highway M-89 in Allegan county in a more or less secluded location in the country, consisted of tents, a building made of paper and another building about 8 x 10 feet in size, partially boarded up, all surrounded by a second growth of scrub oak in a clearing of about three acres. It lay about a mile and a half from the highway and was reached by a road claimed by appellant to be private.

After viewing the camp and the inhabitants thereof from an overhanging bluff on adjoining property, the officers visited the camp without a search warrant, and found about 15 or 20 naked men and women and children, best described by a neighboring property owner as "cavorting around," some on the bank of a creek and others engaged in harmless amusements such as volley ball. The group consisted of the defendant, his wife and two children, six other couples who were married, three unattached men and two other children.

At the trial, defendant's request for the exclusion of the witnesses from the courtroom was denied. This was entirely within the discretion of the court, and no abuse is shown of that discretion. *People* v. *Burns,* 67 Mich. 537.

The sheriff was permitted to testify, over objection, to what appeared to him to have been improper conduct on the part of a man and woman. This, however, did not occur in the presence of the accused. The court did not give appellant's request to charge, which was as follows:

"There was some testimony in this case from the sheriff as to the conduct of two persons upon the rollway. These persons were not under respondent's observation at the time and he is in no manner responsible for their conduct, if there was such conduct."

The failure to give the charge was not error. A jury's conception of what constitutes indecent exposure may very properly be influenced by both the purpose and result of the exposure, so that testimony as to conduct on the premises was admissible.

At the close of the examination before the justice of the peace, and again before testimony was taken in the circuit court, the defendant's motions to dismiss because of a claimed violation of defendant's constitutional immunity against unlawful search were denied (U. S. Const. 4th Am., Michigan Const. of 1908, art. 2, § 10).

The rule stated in *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505), has never been disturbed. Is, however, a nudist camp the defendant's house or castle? We need not repeat the reasoning of the case cited, nor indulge in what might easily be a lengthy discussion of the situation here. While there is no case directly in point in our reports, there is little difficulty in finding respectable authority elsewhere. The curtilage is immune to unreasonable search and seizure, but there is drawn a distinction between the right of peace officers to invade the privacy of one's house and the right to invade one's lands. An open field or roadway is not embraced within the terms of the constitutional prohibition. The obvious intent of the Constitution is to protect the individual in the peaceful enjoyment and occupation of the house in which he lives, the place in which he earns his livelihood and the things connected therewith, and to prevent an unlawful disturbance of his privacy and person. In our ever-changing civilization, it is both difficult and unwise to define the term "curtilage" with exactitude.

That the Constitution does not guarantee the privacy of open lands was held in *Hester* v. *United States,* 265 U. S. 57 (44 Sup. Ct. 445). Our conclu-

sions are also influenced by our study of the following cases: *State* v. *Ladue,* 73 Mont. 535 (237 Pac. 495); *United States* v. *McBride,* 287 Fed. 214; *Schnorenberg* v. *United States* (C. C. A.), 23 Fed. (2d) 38; *Worth* v. *State*, 111 Tex. Cr. R. 288 (12 S. W. [2d] 582); *Brent* v. *Commonwealth,* 194 Ky. 504 (240 S. W. 45); *Dulek* v. *United States* (C. C. A.), 16 Fed. (2d) 275; and *Koth* v. *United States* (C. C. A.), 16 Fed. (2d) 59.

We have examined the appellant's requests to charge, which were refused by the trial court. The office of the charge is to apprise the jury of the questions involved and the rules of law applicable thereto. A study of the charge of the court in the instant case shows that it was sufficient and proper in the light of the statute and the testimony.

Did the acts of the defendant fall within the prohibition of the statute and was he fairly convicted? The people of the State of Michigan, through a statute, have decreed that it shall be illegal for any one to designedly make any open or indecent or obscene exposure of his or her person or of the person of another. The following authorities have been considered: 1 Bishop on Criminal Law (9th Ed.), §§ 1128, 1130; *Commonwealth* v. *Hardin,* 10 Ky. Op. 925; *State* v. *Martin,* 125 Iowa, 715 (101 N. W. 637); *Commonwealth* v. *Hamilton,* 237 Ky. 682 (36 S. W. [2d] 342); *State* v. *Wolf,* 211 Mo. App. 429 (244 S. W. 962); *Van Houten* v. *State,* 46 N. J. Law, 16 (50 Am. Rep. 397); *People* v. *Bixby,* 67 Barb. (N. Y.) 221; *State* v. *Millard,* 18 Vt. 574 (46 Am. Dec. 170); *Redd* v. *State,* 7 Ga. App. 575 (67 S. E. 709); *People* v. *Seltzer,* 122 Misc. Rep. 329 (203 N. Y. Supp. 809); *United States* v. *Dennett* (C. C. A.), 39 Fed. (2d) 564 (76 A. L. R. 1092); *People* v. *Pesky,* 230 App. Div. 200 (243 N. Y. Supp. 193); *People* v. *Wendling,*

258 N. Y. 451 (180 N. E. 169, 81 A. L. R. 799); *Commonwealth* v. *Friede,* 271 Mass. 318 (171 N. E. 472, 69 A. L. R. 640); *State* v. *Burke,* 199 N. C. 458 (154 S. E. 747).

The appellant in his brief submits the clear question:

"Is one who, on his own property, privately goes without clothing, in the presence of persons whose sense of decency, propriety and morality is not offended, guilty of a violation of Act No. 328, § 335, Pub. Acts 1931?"

The answer, in the light of the facts presented in the record, is "Yes." It is clearly shown that the appellant designedly made an open exposure of his person and that of others in a manner that is offensive to the people of the State of Michigan. Such exposure is both open and indecent.

It is not necessary that the crime itself be particularly well defined. The average jury, composed of members of the community, has an instinctive realization of what constitutes a violation of the act. Instinctive modesty, human decency and natural self-respect require that the private parts of persons be customarily kept covered in the presence of others. *People* v. *Kratz,* 230 Mich. 334.

The case was fairly tried, the determination of the jury will not be disturbed, and the conviction is affirmed.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.