PEOPLE v MACKEY

Docket No. 58479. Submitted June 8, 1982, at Grand Rapids.—Decided December 6, 1982.

Robert E. Mackey was convicted of the unlawful manufacture, delivery or possession of marijuana with intent to deliver following a jury trial in Manistee Circuit Court, Charles A. Wickens, J. Defendant appeals, asserting that the trial court erred in failing to suppress certain evidence, in evidencing a prejudice toward defendant, and in instructing the jury as to aiding and abetting. *Held:*

1. The search warrant secured by the police should have been quashed for the reason that the affidavit supporting the request for the search warrant failed to indicate that the information in the affidavit was secured from a fellow officer and failed to set forth the affiant's reason or reasons why the information so received should be deemed reliable.

2. The lack of a valid search warrant does not mandate the suppression of the marijuana found and seized in the open field, since the constitutional search and seizure protections do not extend to searches without a warrant of open fields.

3. Even if the search warrant was valid, the search of the shed located within the curtilage of the farmhouse would be improper by reason of the failure to specifically describe that place as being the subject of the search warrant.

4. Since there was no immediate danger of destruction of

References for Points in Headnotes
[1] 5 Am Jur 2d, Appeal and Error §§ 603, 604.
[2] 68 Am Jur 2d, Searches and Seizures § 64 *et seq.*
  Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.
[3] 68 Am Jur 2d, Searches and Seizures § 67 *et seq.*
  Search warrants: disputing matters stated in supporting affidavit. 5 ALR2d 394.
[4, 5] 68 Am Jur 2d, Searches and Seizures § 20.
[6] 68 Am Jur 2d, Searches and Seizures § 44.
[7] 68 Am Jur 2d, Searches and Seizures § 23.
  Search and seizure: observation of objects in "plain view"—Supreme Court cases. 29 L Ed 2d 1067.
[8] 75 Am Jur 2d, Trial § 724.

evidence and the shed area could be secured by the police, there were not exigent circumstances so as to justify the police proceeding with the search of the shed without first securing a search warrant specifically describing the shed as an object of the search.

5. Since the police had no right to be at the place from which they were able to observe the marijuana located in the second-floor room of the shed, the "plain view" exception does not apply.

6. The record fails to establish any personal prejudice toward the defendant on the part of the trial judge.

7. The trial court erred in instructing the jury *sua sponte* on an aiding and abetting theory, since there was no evidence which would establish the existence of some other person as a principal whom the defendant then aided and abetted.

Reversed and remanded.

1. APPEAL — CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVI-
   DENCE.

   A trial court's ruling on a motion to suppress evidence will not be reversed unless clearly erroneous.

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS —
   MAGISTRATES.

   A police officer may assume that information received from a fellow officer is from a credible source and a magistrate, being presented by such information in an application for a search warrant, may also consider the source to be credible; however, the affiant under such circumstances must inform the magistrate of the fact that the information was received from a fellow officer and of the reason or reasons for finding the information reliable.

3. SEARCHES AND SEIZURES — SEARCH WARRANTS — AFFIDAVITS —
   PROBABLE CAUSE.

   A showing by a preponderance of the evidence that an affiant in seeking a search warrant knowingly and intentionally or with reckless disregard for the truth inserted false material into the affidavit in support of the application for the search warrant and that information was necessary to a finding of probable cause mandates that the search warrant be quashed and the fruits of the search be excluded at trial.

4. SEARCHES AND SEIZURES — SEARCH WARRANTS — OPEN FIELDS —
   CONSTITUTIONAL LAW.

   Neither the United States nor the Michigan constitutional provi-

sions against unlawful searches and seizures protect against the search of an open field without a search warrant (US Const, Am IV; Const 1963, art 1, § 11).

5. SEARCHES AND SEIZURES — SEARCH WARRANTS — CURTILAGE.

Property that is within the curtilage of any dwelling house must be described with specificity in a search warrant in order to justify a search of such property pursuant to that search warrant.

6. SEARCHES AND SEIZURES — EXIGENT CIRCUMSTANCES.

A search without a warrant of a locked shed is not justified by exigent circumstances where police could secure the premises until such time as a search warrant could be secured and there was not reason to believe that time was a factor in conducting the search.

7. SEARCHES AND SEIZURES — PLAIN VIEW.

The plain view exception to the constitutional requirement that searches be conducted pursuant to a warrant is applicable only where the police in making such views are in a place where they have a right to be.

8. CRIMINAL LAW — JURY INSTRUCTIONS — AIDING AND ABETTING.

It is error for a trial court to instruct a jury *sua sponte* on aiding and abetting where there was no evidence of the existence of a principal other than the mere suspicion urged by defense counsel that the criminal acts must have been carried out by someone other than the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Brent Danielson,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

*Terrence J. Raven,* for defendant.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

T. GILLESPIE, J. On April 10, 1981, a jury found the defendant guilty of the unlawful manufacture, delivery or possession of a controlled substance,

* Circuit judge, sitting on the Court of Appeals by assignment.

marijuana, with intent to deliver. MCL 333.7401; MSA 14.15(7401). He was sentenced on May 7, 1981, to a term of 18 months to 4 years imprisonment.

The defendant's problems arose from the fact that two dump truck loads of marijuana, weighing approximately 8,000 pounds, were discovered on his property.

On September 7, 1980, at approximately 10 p.m., Deputy Haik of the Manistee County Sheriff's Department received a telephone call from an informant by the name of Gary Argue, who told him that he knew the location of a cornfield in which marijuana was growing and was in the process of being harvested. Haik and his partner, Deputy Tighe, met with the informant about ten minutes later, at which time the informant showed the deputies some plant material believed to be marijuana. Argue claimed to have picked the marijuana from a cornfield located on defendant's farm.

Deputy Haik contacted the Manistee County Sheriff's Department by telephone and spoke with Detective Sergeant Cloutier. Haik related the information given him by Argue and asked Cloutier to obtain a search warrant for defendant's premises "as a matter of convenience".

Cloutier signed an affidavit as the affiant, stating that he personally talked to the informant. However, Cloutier testified at the suppression hearing that all of his knowledge regarding the marijuana located in defendant's field came from Deputy Haik and that, contrary to the affidavit, he was never told anything by the informant prior to obtaining the warrant.

The search warrant obtained by Cloutier contains the following description of the property to

be searched: "Section 1 in Bear Lake Township off County Road 600 * * * said property being leased or rented by Robert Mackey." The property to be seized was described as "marijuana * * * growing plants * * * bundled cut marijuana".

Although the informant had told Haik that marijuana was being harvested, Haik did not believe that it was imperative for him to determine whether the marijuana was being transported away from the area, because he felt that "the warrant was coming quick enough that we could, in fact, get in before everything was gone. The informant told us that there was a great deal of this stuff in the field that was being harvested."

The raid began around midnight. Once on the scene, Haik went directly to the rear of the corn-field where the officers found marijuana.

Deputy Dale Kowalkowski of the Manistee County Sheriff's Department had arrived on the scene with Detective Cloutier and others. Kowalkowski was unable to serve the search warrant upon defendant because no one would answer the door. At some point, Kowalkowski and others began searching the premises, including the out-buildings. Kowalkowski testified that he could see through the windows and the open doors on the bottom floor of a shed but saw nothing that appeared to be marijuana.

However, according to Kowalkowski, he observed a new stairway leading up to a closed door at the second level of the shed. There was a hasp on the door with a padlock through it. Shining a flashlight through a crack in the door, Kowalkowski observed a green leafy substance inside the shed. He and Haik later went up the stairs and with their flashlights shined through the crack in the door and observed a large quantity of cut and

bundled marijuana. Haik broke the lock off with a tire iron and they entered the shed. On cross-examination, Kowalkowski stated that, prior to looking through the closed door, he did not have any reason to search the second floor of the shed.

Defendant was arrested in the early morning hours of September 8, 1980.

At a hearing conducted on April 6, 1981, defendant moved to suppress the marijuana alleging that (1) the search warrant for the cornfield was invalid because it was supported by an affidavit containing false information and (2) the search of the shed was illegal because it was conducted without a search warrant.

The trial court denied defendant's motion, finding that the defect in the affidavit was a mere technicality and that the search of the shed was justified by exigent circumstances. A trial court's ruling on a motion to suppress evidence will not be reversed unless it is clearly erroneous. *People v Grimmett,* 97 Mich App 212, 214; 293 NW2d 768 (1980), *lv den* 411 Mich 853 (1981).

The first issue raised on appeal by defendant is a narrow one. In obtaining the search warrant, the affiant police officer relied upon information obtained by another officer from an informant. Defendant does not challenge the informant's knowledge or credibility nor does he allege an inconsistency between the informant's statements and what was recited in the affidavit. Defendant's sole challenge is to the veracity of the affiant's first-person statements since the affiant had, in fact, received his information from the informant through a third person, Deputy Haik.

It is not disputed that information received from a fellow officer may properly be used as a basis for a warrant affidavit. *United States v McCormick,*

309 F2d 367, 372 (CA 7, 1962), *cert den* 372 US 911; 83 S Ct 724; 9 L Ed 2d 719 (1963). When one police officer receives information from a fellow officer, the law assumes the source is credible. Where the information is then presented to a magistrate in an application for a search warrant, the magistrate, too, may consider the source to be credible. *People v Fuller,* 106 Mich App 263, 266; 307 NW2d 467 (1981).

This rule, however, does not relieve the affiant of his obligation to inform the magistrate of the fact that he received the information from a fellow officer and of his reason or reasons for finding the information reliable. The question here is whether the trial court's finding that Detective Cloutier's failure to so inform the magistrate was immaterial constitutes an error mandating reversal.

The test for determining whether false statements made in a warrant affidavit require suppression of the evidence obtained by means of the warrant was enunciated by the United States Supreme Court in *Franks v Delaware,* 438 US 154, 155-156; 98 S Ct 2674; 57 L Ed 667 (1978). In *Franks,* two detectives executed an affidavit for a search warrant in which they reported receiving information from two informants. Defendant alleged that the detectives had, in fact, received the information from another police officer and that the information was not accurately recited in the affidavit. The trial court in *Franks* denied defendant a hearing on the merits of his challenge to the veracity of the information contained in the affidavit.

The Supreme Court remanded with directions for the trial court to hear and decide defendant's challenge to the veracity of the information in accordance with the following test: where a defen-

dant can show by a preponderance of the evidence that the affiant has knowingly and intentionally or with reckless disregard for the truth inserted false material into the affidavit and that the false material is necessary to a finding of probable cause, the search warrant must be quashed and the fruits of the search excluded at trial. 438 US 170-171. See also *People v Price (On Remand),* 91 Mich App 328, 330-331; 283 NW2d 736 (1979); *People v Beets,* 105 Mich App 350, 354; 306 NW2d 508, *lv den* 411 Mich 996 (1981); *People v Ward,* 107 Mich App 38, 50-53; 308 NW2d 664 (1981).

Our review of the record in the present case discloses that the trial court failed to apply the *Franks* test in determining whether Officer Cloutier knowingly and intentionally or with reckless disregard made false statements regarding the source of his information and, if so, whether those statements were necessary to a finding of probable cause. However, we decline to remand since we believe that the search of the cornfield was permissible even without a warrant.

The Fourth Amendment to the United States Constitution does not protect against searches without a warrant of open fields. This rule was first articulated by Mr. Justice Holmes in *Hester v United States,* 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924), and has never been overruled.

In a recent case, the United States Court of Appeals for the Ninth Circuit reiterated the efficacy of the "open fields" exception in a case in which police officers discovered marijuana while conducting a search without a warrant of a van apparently abandoned in an open field. *United States v Basile,* 569 F2d 1053, 1056 (CA 9, 1978), *cert den* 436 US 926; 98 S Ct 2268; 56 L Ed 2d 761 (1978).

For other opinions citing the open fields exception to the Fourth Amendment, see *Air Pollution Variance Board v Western Alfalfa Corp,* 416 US 861, 865; 94 S Ct 2114; 40 L Ed 2d 607 (1974); *United States v Hassell,* 336 F2d 684, 685 (CA 6, 1964), *cert den* 380 US 965; 85 S Ct 1111; 14 L Ed 2d 155 (1965), and fn 8 of Justice Stewart's majority opinion and Justice Harlan's concurrence in *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967).

Just recently, the United States Court of Appeals for the Sixth Circuit undertook an extensive discussion and review of federal cases relying on the open fields exception and concluded that the exception has survived the test of *Katz, supra,* and other Fourth Amendment limitations. *United States v Oliver,* 686 F2d 357 (CA 6, 1982).

Neither does the Michigan Constitution protect against the warrantless search of an open field, *People v Ring,* 267 Mich 657, 660; 255 NW 373 (1934), despite the higher standard imposed by our state constitution in protecting against searches without a warrant. *People v Secrest,* 413 Mich 521, 525; 321 NW2d 368 (1982). Although the Court in *Ring* reached its decision based on the 1908 Constitution, the search and seizure provision of the Michigan Constitution did not undergo any substantive changes with the adoption of the 1963 Constitution. Const 1963, art 1, § 11. Moreover, this Court may rely upon federal case authority, as we have done in the instant case, in analyzing state constitutional questions. *People v Secrest, supra.*

Defendant's federal and state constitutional rights against unreasonable search and seizure were not violated by the search of the cornfield and the trial court properly admitted into evidence marijuana seized from that field.

We must next determine whether the marijuana obtained from the shed should have been suppressed by the trial court on the grounds that it was obtained through an illegal search without a proper warrant.

Initially we find that the search warrant in this case, assuming *arguendo* that it is valid, does not authorize a search of the defendant's shed. The following description of the property to be searched was contained in the warrant: "Section 1 in Bear Lake Township off County Road 600 * * * said property being leased or rented by Robert Mackey." While it is recognized that rural property does not lend itself readily to precise description, *United States v Hassell,* 427 F2d 348 (CA 6, 1970), property that is within the curtilage of any dwelling house must be described with specificity in a search warrant to justify a search of that property. *People v Bawiec,* 228 Mich 32, 35; 199 NW 702 (1924). In *Bawiec,* police officers obtained a warrant to search the defendant's two-story frame house. They instead searched an old log house some 18 or 20 feet away from the house. The Supreme Court held that the search of the log house was impermissible as it was within the curtilage of defendant's dwelling house and was not specifically described in the warrant.

In the instant case, the search warrant did not describe either the dwelling house or the shed. Because the shed is within the curtilage of defendant's dwelling house, defendant had an expectation of privacy under the Michigan Constitution.

The trial court found that the search of the shed was justified by exigent circumstances. We do not agree. When the shed was discovered, at least several police officers were on the property. There was no evidence of harvesting activity, and it even

appears that no one was present in the house. One of the officers could have left to obtain a warrant, leaving the others to secure the premises. The fact that the officers had already obtained a warrant that evening to search the cornfield indicates that time was not an absolute factor. *People v Plantefaber,* 410 Mich 594, 604; 302 NW2d 557 (1981), *cert den* 454 US 975; 102 S Ct 527; 70 L Ed 2d 396 (1981).

The prosecution also urges application of the "plain view" exception, which argument was rejected by the trial court below. We agree with the trial court's holding. The conditions for applying the "plain view" exception are well established as reviewed by Judge MAHER in *People v Dugan,* 102 Mich App 497, 503-504; 302 NW2d 209 (1980), *lv den* 411 Mich 989 (1981), *cert den* 455 US 927; 102 S Ct 1292; 71 L Ed 2d 471 (1982). One condition justifying a search without a warrant under this exception is that the police must be in a place where they have a right to be. *People v Murphy,* 87 Mich App 461, 464-465; 274 NW2d 819 (1978). Inasmuch as the warrant obtained in this case did not authorize the presence of the officers at the shed, Deputy Kowalkowski's discovery of the marijuana as a result of his climbing the staircase of the shed and peering through the cracks in the door can not be considered to be the result of seeing the contraband in "plain view".

The marijuana discovered in defendant's shed was thus obtained as a result of an illegal search and should not have been admitted into evidence at trial.

The defendant also argues that the trial judge was personally biased against him because of a comment made by the judge in chambers during discussion of the motion to suppress. The defen-

dant failed to show any personal prejudice on the part of the judge, and there was no claim that any statement prejudicial to defendant was made before the jury. *People v Page,* 83 Mich App 412, 419; 268 NW2d 666 (1978); *Tyrrell v Tyrrell,* 107 Mich App 435, 437; 309 NW2d 632 (1981).

The last issue raised by defendant on appeal challenges the trial court's delivery, *sua sponte,* of an aiding and abetting instruction to the jury. There was some evidence introduced at trial showing that the farm was owned by a man named Lutz. The defendant's attorney argued that a reasonable assumption was that the marijuana was grown and harvested by Lutz.

The general rule governing jury instructions on aiding and abetting given *sua sponte* is described in *People v Parks,* 57 Mich App 738, 743-745; 226 NW2d 710 (1975). In *Parks,* this Court held that it was reversible error to instruct on aiding and abetting where there is no evidence to support such a theory:

"In order to warrant such an instruction, there must exist some evidence of a 'concert of action' between the defendant and the principal in the commission of a crime. *People v Marshall,* 53 Mich App 181; 218 NW2d 847 (1974).

"The *sine qua non* of aiding and abetting is that more than one person must be criminally involved either before, during, or after the commission of a crime. A defendant cannot aid and abet himself in the commission of his crime. In order to sustain a charge of aiding and abetting against an accessory, the guilt of another person as principal must be shown. *People v DeBolt,* 269 Mich 39; 256 NW 615 (1934); *People v Williams #1,* 45 Mich App 623; 207 NW2d 176 (1973)." 57 Mich App 743.

In this case, there was no evidence, except a

suspicion thrown out by counsel, to justify the giving of an aiding and abetting instruction. On retrial, unless evidence appears that there was a principal, this instruction should not be given.

Reversed and remanded for new trial at which evidence of the marijuana seized from the shed shall be excluded.