PEOPLE v ROTAR

Docket No. 71896. Submitted April 18, 1984, at Detroit.—Decided
    September 17, 1984. Leave to appeal applied for.

Defendant, Ilija Rotar, was convicted by a jury in the St. Clair
    Circuit Court of the second-degree murder of his wife, Radmila
    Rotar. The trial court, Peter E. Deegan, J., sentenced defendant
    to life imprisonment. Defendant appeals alleging several errors.
    *Held:*

1. The trial court did not err in denying the defendant's
    motion to suppress evidence consisting of a skull, identified as
    Radmila Rotar's, and other bones obtained as a result of a
    search of the defendant's property. The record contains suffi-
    cient facts to support the trial court's conclusion that defendant
    had abandoned the real property, severing any reasonable
    expectation of privacy. Further, as the trial court correctly
    found, there was no Fourth Amendment violation, as the bones
    were located in what was clearly an open field and subject to
    search under the open fields doctrine. The search was not an
    illegal invasion of the curtilage. It was clearly the permissible
    investigation of an open field.

2. The record supports the trial court's finding that George
    Wakefield, defendant's land contract vendor, was not acting as
    an agent of the police when he spread the manure pile in
    which the bones were found.

3. The trial court did not abuse its discretion in admitting
    testimony that the defendant's wife had filed for a divorce as

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 2-6.
[1-3] 68 Am Jur 2d, Searches and Seizures § 20.
[4] 29 Am Jur 2d, Evidence § 363 *et seq.*
[5] 29 Am Jur 2d, Evidence §§ 264, 266, 363.
[6] 21 Am Jur 2d, Criminal Law § 361 *et seq.*
    77 Am Jur 2d, Venue § 36.
[7] 40 Am Jur 2d, Homicide § 45 *et seq.*
Modern status of the rules requiring malice "aforethought," "delib-
    eration," or "premeditation," as elements of murder in the first
    degree. 18 ALR4th 961.
[8] 75 Am Jur 2d, Trial §§ 61, 62.

evidence of a circumstance supporting a reasonable inference of marital discord. No reversible prejudice resulted from the prosecutor's failure in closing argument to clearly focus on the circumstantial use of the evidence.

4. The trial court's allowance of the introduction into evidence of an order by the Attorney General designating venue in St. Clair County did not under the circumstances remove the venue issue from the jury's consideration. Further, as the trial court determined, there was sufficient evidence, irrespective of the order, from which the jury could place venue in St. Clair County.

5. The trial court did not err reversibly in finding sufficient facts and circumstances to support a charge of premeditation and deliberation.

6. The trial court did not abuse its discretion in declining to instruct witnesses who had testified that they were not to discuss their testimony with other witnesses as part of a sequestration order.

7. Defendant's sentence of life imprisonment was not improper and was not contingent upon whether defendant would ever be eligible for parole.

Affirmed.

1. CONSTITUTIONAL LAW — FOURTH AMENDMENT — SEARCHES AND SEIZURES — OPEN FIELDS.

An individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home; the Fourth Amendment does not provide an individual a legitimate expectation that open fields will remain free from intrusions by government officers conducted without a warrant (US Const, Am IV; Const 1963, art 1, § 11).

2. CONSTITUTIONAL LAW — FOURTH AMENDMENT — SEARCHES AND SEIZURES — OPEN FIELDS.

Michigan has long recognized that an open field is not protected by the constitutional prohibition against unlawful search and seizure (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — OPEN FIELDS.

The United States Supreme Court, in discussing the open fields doctrine regarding searches and seizures, has specifically rejected the notion of a case-by-case evaluation of factors which might indicate an expectation of privacy in an open field and has refused to consider the remoteness of a field, the height of a fence, or the number of warning signs posted as establishing the legitimacy of such expectations.

4. Criminal Law — Evidence — Motive.

   Evidence of facts or circumstances offered to directly establish a motive for the defendant's criminal act may be admitted only if the prosecutor presents evidence that the defendant knew of the pertinent facts or circumstances.

5. Criminal Law — Evidence — Circumstantial Evidence.

   A trial court does not abuse its discretion in a trial for first-degree murder in admitting evidence that the deceased wife had filed for a divorce from the defendant as evidence of a circumstance supporting a reasonable inference of marital discord and not, in and of itself, as evidence of motive; defendant's lack of knowledge of the filing of the divorce does not preclude the admission of such evidence for such a purpose.

6. Criminal Law — Venue — Attorney General — Jury Issues.

   An order by the Attorney General designating venue in a criminal matter in a specific county pursuant to the statute regarding such a designation in matters wherein it is impossible to determine within which county such crime occurred does not remove the issue of venue from the jury's consideration (MCL 762.3; MSA 28.846).

7. Homicide — First-Degree Murder — Premeditation — Deliberation.

   Premeditation and deliberation can be reasonably inferred in a trial for first-degree murder from the circumstances surrounding the killing.

8. Witnesses — Evidence — Sequestration of Witnesses.

   The ordering of sequestered witnesses not to discuss the evidence while outside the courtroom is within the discretion of the trial court.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *Gail Rodwan),* for defendant on appeal.

Before: SHEPHERD, P.J., and BEASLEY and W. J.
CAPRATHE,* JJ.

BEASLEY, J. Defendant, Ilija Rotar, was convicted
by a jury of the second-degree murder of his wife,
Radmila Rotar, contrary to MCL 750.317; MSA
28.549, and was sentenced to life imprisonment.
Defendant appeals as of right, raising several is-
sues, none of which require reversal.

First, defendant contends that the court errone-
ously denied his motion to suppress evidence con-
sisting of a skull and other bones obtained as a
result of an alleged illegal search of his property.
The bones, which included a lower jawbone with
dental work later identified as Radmila Rotar's,
were discovered when a manure pile was spread
over a field by George Wakefield. The manure pile
and field were located on property which the de-
fendant was purchasing on a land contract from
Wakefield. The discovery of the bones was reported
to Detective Quain, chief investigating officer in
the case of Mrs. Rotar's disappearance. Detective
Quain was taken to the site by the neighbors who
had reported the skull, and he retrieved the bones
the following morning after obtaining a search
warrant.

On review, we believe the record contains suffi-
cient facts to support the trial court's conclusion
that defendant had abandoned the real property,
severing any reasonable expectation of privacy.
Further, as the trial court found, even in the
absence of the finding of abandonment, there was
no Fourth Amendment[1] violation, as the bones
were located in what was clearly an open field and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] US Const, Am IV; Const 1963, art 1, § 11.

subject to search under the open fields doctrine.[2]
Defendant's argument that Wakefield was acting
as an agent of the police when Wakefield spread
the manure pile was found to lack merit by the
trial court. We agree that the record supports that
finding.[3]

In his recent opinion in *Oliver v United States*,[4]
Justice Powell described the rationale of the "open
fields" doctrine of *Hester v United States*[5] as fol-
lows:

"No single factor determines whether an individual
legitimately may claim under the Fourth Amendment
that a place should be free of government intrusion not
authorized by warrant. * * * In assessing the degree to
which a search infringes upon individual privacy, the
Court has given weight to such factors as the intention
of the Framers of the Fourth Amendment, * * * the
uses to which the individual has put a location, * * *
and our societal understanding that certain areas de-
serve the most scrupulous protection from government
invasion. * * * These factors are equally relevant to
determining whether the government's intrusion upon
open fields without a warrant or probable cause violates
reasonable expectations of privacy and is therefore a
search proscribed by the Amendment.

"In this light, the rule of *Hester v United States,
supra,* that we reaffirm today, may be understood as
providing that an individual may not legitimately de-
mand privacy for activities conducted out of doors in
fields, except in the area immediately surrounding the
home. * * *

"In contrast, open fields do not provide the setting for
those intimate activities that the Amendment is in-
tended to shelter from government interference or sur-
veillance. There is no societal interest in protecting the

[2] *United States v Oliver,* 657 F2d 85 (CA 6, 1981), *rev'd* 686 F2d 356
(CA 6, 1982), *aff'd* — US —; 104 S Ct 1735; 80 L Ed 2d 214 (1984).

[3] *People v Langley,* 63 Mich App 339; 234 NW2d 513 (1975).

[4] See fn 2 *supra,* 104 S Ct 1741; 80 L Ed 2d 223-225.

[5] 265 US 57; 44 S Ct 445; 68 L Ed 898 (1924).

privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office or commercial structure would not be. It is not generally true that fences or no trespassing signs effectively bar the public from viewing open fields in rural areas. And both petitioner Oliver and respondent Thornton concede that the public and police lawfully may survey lands from the air. For these reasons, the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable'." (Citations omitted; footnotes omitted.)

While the common law extended the protections associated with the home to the "curtilage", defined as the land immediately surrounding and associated with the home, the Court concluded that this distinction between curtilage and open fields implies that only the curtilage, not the neighboring open fields, may be reasonably expected to remain private:

"We conclude, from the text of the Fourth Amendment and from the historical and contemporary understanding of its purposes, that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers."[6]

Both cases considered by the Court in *Oliver* involved officers' entry into "open fields", past fences bearing "no trespassing" signs, while investigating tips that marijuana was being grown there. The Court specifically rejected the notion of a case-by-case evaluation of factors which might indicate an expectation of privacy in an open field and refused to consider the remoteness of a field, the height of a fence, or the number of warning

---

[6] *Oliver, supra,* 104 S Ct 1742; 80 L Ed 2d 225-226.

signs posted as establishing the legitimacy of such expectations. The Court stated:

"The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment. As we have explained, we find no basis for concluding that a police inspection of open fields accomplishes such an infringement." (Footnote omitted.)[7]

Michigan has long recognized that an open field is not protected by the constitutional prohibition against unlawful search and seizure. In *People v Ring*,[8] the Michigan Supreme Court cited *Hester, supra,* holding that the constitution does not guarantee the privacy of open lands and affirmed defendant's conviction for indecent exposure of his person as well as that of other persons as operators of a nudist colony which was located in a relatively secluded field. However, *Ring* was questioned by the dissent in *People v Hildabridle*,[9] when Justice VOELKER concluded that the *Ring* Court had been guilty of an excessive bit of moralizing under the statute. In *Hildabridle,* the Court split 3-3, with the tie being broken in favor of Justice VOELKER's opinion by Justice EDWARDS' opinion concurring in the reversal. Justice EDWARDS' concurrence noted that the search was arguably justified under the "open field" rule of *Hester, supra.* He found reversal was merited because sufficient facts were provided to establish that the curtilage had been illegally invaded.

[7] *Id.,* 104 S Ct 1743; 80 L Ed 2d 227.
[8] 267 Mich 657, 660; 255 NW 373 (1934).
[9] 353 Mich 562; 92 NW2d 6 (1958).

In *People v Ubbes*,[10] an off-duty trooper observed an arc welder partially concealed under a tarp when he pursued his hunting dog into a fenced-in field. The trooper confirmed that the welder was stolen and returned in uniform with a warrant to arrest the property owner. The court did not find that the officer had conducted an unlawful search and called his actions "at best a technical trespass * * * [which] in nowise rendered what he observed there * * * the fruit of an illegal search".[11]

In *People v Mackey*,[12] this Court upheld the search of a cornfield where marijuana was being grown and harvested. The Court held that the fruits of the search of the field need not have been suppressed as the result of an allegedly defective warrant, as the search of the open field was permissible under *Hester* and *Ring, supra,* without a warrant.[13]

The search in the within case would clearly have been permissible under the *Hester* rule. When the neighbors took Quain to investigate, the skull was located in the field approximately one-quarter mile from the road. It was thrown there by Wakefield after he discovered it in the manure spreader while spreading the manure pile on the field. The field was fenced on only two sides and was not obstructed by a gate or signs.

As discussed previously, the Supreme Court's opinion in *Oliver, supra,* eliminates any need to weigh the presence of fences or signs. The search was not an illegal invasion of the curtilage. It was

[10] 374 Mich 571; 132 NW2d 669 (1965).

[11] *Id.,* p 578.

[12] 121 Mich App 748; 329 NW2d 476 (1982).

[13] The case was reversed and remanded for a new trial, however, excluding other evidence which was found to have been illegally seized.

clearly the permissible investigation of an open field.

Second, defendant contends that it was error for the trial court to admit testimony that defendant's wife had filed for divorce. We disagree. Evidence of facts or circumstances offered to directly establish a motive for the defendant's criminal act may be admitted only if the prosecutor presents evidence that the defendant knew of the pertinent facts or circumstances. If defendant was not aware of the facts or circumstances, the evidence obviously has no probative value as to motive. In *People v Morgan*,[14] the Supreme Court held that evidence of an insurance policy on the life of the deceased, offered to prove motive, was not admissible where the prosecutor failed to present evidence that defendant knew of the insurance policy.[15] *People v Kuhn*,[16] does not hold to the contrary.

In the present case, however, evidence that the victim had commenced a divorce action against defendant was not admitted, in and of itself, as evidence of motive. Rather, the evidence was admitted as evidence of a circumstance tending to prove marital disharmony, which could have provided a motive for defendant's act. Defendant's lack of knowledge of the divorce action did not preclude admission of the evidence since, regardless of defendant's knowledge, the jury could reasonably infer the existence of marital discord. This is especially true in view of Deputy Gleason's testimony that defendant admitted having marital problems.

We conclude that the trial court did not abuse its discretion in admitting evidence of the divorce

---

[14] 124 Mich 527; 83 NW 275 (1900).

[15] See, also, *People v Auerbach,* 176 Mich 23; 141 NW 869 (1913); 1 Wharton's Criminal Evidence (13th ed), § 176, p 330.

[16] 232 Mich 310, 312; 205 NW 188 (1925).

action as evidence of a circumstance supporting a reasonable inference of marital discord. Although the prosecutor's closing argument failed to clearly focus on the circumstantial use of the evidence, defense counsel did not specifically object to the argument, and we find that no prejudice requiring reversal resulted.

Third, defendant contends that the issue of venue was improperly taken from the jury's consideration when the court permitted the prosecutor to introduce the Attorney General's order designating venue in St. Clair County. Venue was at issue in this case because, while the evidence established that Radmila Rotar was last seen in St. Clair County and her remains were also discovered in that county, it was impossible to prove the exact location of her death. The Attorney General's order designating venue was requested by the prosecutor pursuant to MCL 762.3; MSA 28.846. We disagree with defendant's contention that the order's introduction removed the venue issue from the jury's consideration. The trial court agreed with defendant that the order could not pre-empt the jury function and instructed accordingly. Further, as the trial court determined, there was sufficient evidence, irrespective of the order, from which the jury could place venue in St. Clair County.

Fourth, defendant argues that it was improper to permit the jury to consider the charge of first-degree murder because there was no evidence of premeditation and deliberation. Premeditation and deliberation can be reasonably inferred from the circumstances surrounding the killing.[17] Defendant's brief summarizes the evidence as follows:

[17] *People v Berthiaume,* 59 Mich App 451, 456; 229 NW2d 497 (1975), *lv den* 394 Mich 788 (1975).

"Mrs. Rotar's remains were found on the family farm some nine to ten months after her disappearance. Defendant Rotar was alleged to have been the last person to see his wife alive, and after her disappearance he gave inconsistent stories about what might have happened to her. Traian Felipe testified that defendant Rotar borrowed a .25 caliber gun from him shortly before Mrs. Rotar's disappearance; Dr. Spitz testified that the two holes at the base of Mrs. Rotar's skull were caused by .25 caliber bullets. The Rotar children observed burned clothing sometime after their mother's disappearance. Defendant Rotar left the area, and later allegedly inquired about the manure pile."

However, as the prosecutor notes, there was also testimony that defendant and his wife had marital problems; the daughter's testimony that her mother, Radmila, and defendant were arguing on the night before her mother's disappearance and her mother came to bed crying, and that early the next morning the daughter heard a "thump" on the floor which sounded like "something falling". Based on this evidence, we do not believe that the trial court erred reversibly in finding sufficient facts and circumstances to support a charge of premeditation and deliberation.

Fifth, defendant claims that the court erred when it declined to instruct witnesses who had testified that they were not to discuss their testimony with other witnesses as part of a sequestration order. Defendant does not specifically allege that he was prejudiced, but states that this ruling "creates a strong probability of prejudice". While recognizing that giving the requested instruction is within a trial judge's discretion,[18] we find that no abuse of discretion occurred.

Finally, defendant contends that his sentence of

[18] *People v Stanley,* 71 Mich App 56, 62; 246 NW2d 418 (1976).

life imprisonment was improper. While, as defendant notes, the trial judge expressed his opinion that an opinion of the Attorney General[19] incorrectly concluded that MCL 791.233(1)(b); MSA 28.2303(1)(b) precludes parole on a life sentence, the judge stressed that his sentence was not contingent upon whether defendant would ever be eligible for parole. Therefore, we will not reverse defendant's sentence on this ground.

Affirmed.

---

[19] OAG, 1979-1980, No 5583, p 438 (October 16, 1979).