PEOPLE v McGHEE
PEOPLE v TUCKER

Docket Nos. 239467, 239621. Submitted December 3, 2002, at Detroit. Decided March 11, 2003, at 9:05 A.M. Leave to appeal sought.

Larry A. McGhee, charged in the Oakland Circuit Court with several counts of possession with intent to deliver controlled substances, moved for the suppression of evidence of the drugs found in a detached garage during a search of McGhee's residence. The court, John J. McDonald, J., granted the motion, concluding that the search of the detached garage exceeded the scope of the search warrant. The prosecution appealed, and the defendant cross-appealed regarding the finding of probable cause for issuance of the warrant. Docket No. 239467.

Devon B. Tucker, charged in the Oakland Circuit Court with, among others things, possession with intent to deliver fifty to 225 grams of cocaine, moved for the suppression of evidence of drugs found in a dog-run during a search of Tucker's residence. The court, Richard D. Kuhn, J., granted the motion, concluding that the search of the dog-run exceeded the scope of the search warrant. The court subsequently dismissed the charge of possession with intent to deliver cocaine. The prosecution appealed by leave granted. Docket No. 239621. The appeal was consolidated with the appeal and cross-appeal in the case involving McGhee.

The Court of Appeals *held*:

1. The circuit courts erred in granting the motions to suppress because the warrants in question specifically referred to any "storage areas" (Docket No. 239467) or "spaces" (Docket No. 239621) accessible from the defendants' residences. This language was sufficient to include within the scope of the warrants the detached garage and the dog-run where the drugs were found.

2. To the extent the decision in *People v Bawiec*, 228 Mich App 32 (1924), held that a search warrant authorizing only the search of dwelling house, with no reference to outbuildings within the curtilage, does not justify a search of such buildings, the facts in that case are distinguishable from the facts in the instant cases. Furthermore, federal and state courts since *Bawiec* have consistently held that the Fourth Amendment is not violated by a search of the

grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence. It is likely that the Michigan Supreme Court would adopt a similar analysis, rather than follow *Bawiec*, and hold that the instant searches were not unconstitutional.

3. There was a substantial basis for the finding of probable cause in Docket No. 239467, because the affidavit in support of the search warrant reflected a prolonged investigation, and it was unclear whether alternative investigative techniques were available to update the probability that the evidence was presently on the property. In light of the money and quantities involved, the investigating officer's experience, and the testimony provided to the grand jury, there was a fair probability that contraband would be found on the premises. The warrant was not void on the basis of a lapse of time between the events alleged in the affidavit and the execution of the warrant, because it could be presumed that criminal activity was ongoing at the time of the warrant request.

4. The orders of the circuit courts suppressing the evidence must be reversed, the order dismissing the charge in Docket No. 239621 must be reversed, and the ruling involved in the cross-appeal in Docket No. 239467 must be affirmed.

Reversed; affirmed in the cross-appeal in Docket No. 239467.

SEARCHES AND SEIZURES — SEARCH WARRANTS — RESIDENCES — GROUNDS AND OUTBUILDINGS.

The Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence (US Const, Am IV; Const 1963, art 1, § 11).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David* Gorcyca, Prosecuting Attorney, Joyce *Todd*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Jeffrey A. Taylor* for Larry A. McGhee.

*Hatchett, DeWalt & Hatchett* (by *Ronald McDuffie*) for Devon B. Tucker.

Before: GRIFFIN, P.J., and WHITE and MURRAY, JJ.

WHITE, J. In Docket No. 239467, the prosecution appeals by leave granted the circuit court's order suppressing evidence found in a detached garage when a search warrant was executed at defendant Larry A. McGhee's home. The circuit court determined that the search of the garage exceeded the scope of the warrant. Defendant McGhee cross-appeals, challenging the finding of probable cause for issuing the warrant. In Docket No. 239621, the prosecution appeals by delayed leave granted the circuit court's suppression order and the resulting order dismissing one charge against defendant Devon B. Tucker. The circuit court determined that the search of a fenced-in dog run adjacent to the garage of defendant Tucker's home exceeded the scope of the warrant. This Court consolidated the appeals. We reverse the order suppressing the evidence in both cases,[1] as well as the order of dismissal in *Tucker*, and we affirm in the cross-appeal in *McGhee*.

I

A defendant has the right to be secure from unreasonable searches and seizures under both the federal and state constitutions. US Const, Am IV; Const 1963, art 1, § 11; *People v Kaslowski*, 239 Mich App 320, 323; 608 NW2d 539 (2000). "The constitutions of both Michigan and the United States state that a warrant shall not issue without particularly describing the place to be searched." *People v Hampton*, 237 Mich

---

[1] We note, however, that a simple expedient would be for such warrants to include in the future, at the least, the language of *People v Jones*, 249 Mich App 131; 640 NW2d 898 (2002), discussed in n 3, *infra*, where supported by probable cause.

App 143, 150; 603 NW2d 270 (1999), citing US Const, Am IV; Const 1963, art 1, § 11; MCL 780.654; and *People v Garvin*, 235 Mich App 90; 597 NW2d 194 (1999).

> The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended. *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925); *United States v Gahagan*, 865 F2d 1490, 1496 (CA 6, 1989). The Fourth Amendment safeguard is designed to require a description that particularly points to a definitely ascertainable place so as to exclude all others. *Id.* Thus, the test for determining the sufficiency of the description of the place to be searched is (1) whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premises might be mistakenly searched. *Id.* at 1496-1497. The requirement is designed to avoid the risk of the wrong property being searched or seized. [*Hampton, supra* at 150-151.]

A search warrant should be read in a common-sense and realistic manner. *People v Russo*, 439 Mich 584, 604; 487 NW2d 698 (1992).

This Court reviews a circuit court's ruling regarding a motion to suppress for clear error. *People v Oliver*, 464 Mich 184, 191-192; 627 NW2d 297 (2001); *People v Beuschlein*, 245 Mich App 744, 748; 630 NW2d 921 (2001). The application of a constitutional standard to uncontested facts, as in the instant cases, is not entitled to the same deference as factual findings; these questions of law are reviewed de novo. *People v Stevens (After Remand)*, 460 Mich 626, 631; 597 NW2d 53 (1999).

*McGHEE* (DOCKET NO. 239467)

The search warrant in Docket No. 239467 described the place to be searched as:

> All rooms, compartments, crawlspaces, hallways, storage areas, porches and any attic or basement accessible therefrom of 483 Montana, City of Pontiac, County of Oakland, State of Michigan. It is described as a single-story, single-family dwelling with white siding. It is the fifth house east of Motor on the south side of Montana, with the numbers "483" clearly visible on the front of the residence.

The warrant authorized a search for records and proceeds of narcotics trafficking, among other things. The affidavit alleged probable cause that such evidence "is now located upon said described premises."[2]

The prosecution argued that the detached garage was both a "storage area" and "accessible" from 483 Montana. The circuit court concluded that the warrant specifically described areas contained *within* the home only, noting that the term "storage area" was in the middle of the description of the place to be searched, and that the warrant did not say *exterior* storage areas.

The prosecution moved for rehearing on the basis of *People v Jones*, 249 Mich App 131; 640 NW2d 898

---

[2] Paragraph (x) of the affidavit in support of the search warrant stated:

> That it is common for large scale drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their *residences, their businesses and/or storage areas* for ready access and to conceal them from law enforcement authorities. [Emphasis added.]

(2002). The circuit court denied rehearing, concluding that *Jones* was distinguishable.[3]

---

[3] We agree with the circuit court that *Jones* is distinguishable. Unlike the warrants in the instant cases, the search warrant in *Jones* used the term "premises":

> "The premises commonly referred to as 1620 N. Rose, City of Kalamazoo . . . . The premises is further described as being a brown single story, single family residence with white trim. The premises is also described as being the third structure north of Prouty St. on the east side of N. Rose St. The numbers '1620' as affixed to the front of the structure just inside the front porch which is enclosed. *Also to be searched are any grounds, rooms, closets, storage spaces and or appurtenant structures located on the premises and in the control of the resident* of 1620 N. Rose St." [*Jones*, 249 Mich App at 132, quoting the trial court's opinion, which quoted the search warrant (emphasis added).]

The defendant in *Jones* asserted he was entitled to suppression of evidence seized from a vehicle parked at the rear of the home, partially off the driveway, because the vehicle was not specifically listed in the affidavit and warrant. The circuit court denied the defendant's motion to suppress drugs and firearms seized from the vehicle's trunk.

This Court affirmed, noting:

> At the outset, we note that because defendant has not advanced "compelling reasons" for greater protection, we treat the guarantees of the United States (US Const Ams IV and XIV) and Michigan Constitutions (Const 1963, art 1, § 11) as coextensive. *People v Levine*, 461 Mich 172, 178-179; 600 NW2d 622 (1999); *Sitz v Dep't of State Police*, 443 Mich 744, 758-759; 506 NW2d 209 (1993).

> \* \* \*

> In support of their respective positions, the people rely on *People v Hahn*, 183 Mich App 465; 455 NW2d 310 (1989), [vacated in part on other grounds 437 Mich 867 (1990),] while defendant argues *People v Mackey*, 121 Mich App 748; 329 NW2d 476 (1982). However, we conclude that neither *Hahn* nor *Mackey* is dispositive. In *Hahn*, the search warrant "specifically authorized the search of the defendant's garage wherein the [searched] car was located." *Hahn*, *supra* at 469. On the other hand, the warrant in *Mackey* authorized the search of "[s]ection 1 in Bear Lake Township off County Road 600 . . . said property being leased or rented by Robert Mackey," which we held was too general to authorize the search of a shed located adjacent to, and within the curtilage of, defendant's dwelling house. *Mackey*, *supra* at 757.

*TUCKER* (DOCKET NO. 239621)

The search warrant in Docket No. 239621 stated:

All rooms, compartments, spaces and any attic or base-
ment accessible there from 18 Dakota, located in the City of

B

Although Michigan has not ruled on the precise issue raised by
defendant, nearly all jurisdictions that have decided the question
have held a search warrant for "premises" authorizes the search of
all automobiles found on the premises. Much of the applicable
authority on this issue is chronicled in 2 LaFave, Search and
Seizure: *A Treatise on the Fourth Amendment* (3d ed), § 4.10(c),
p 667, n 59. There, Professor LaFave concludes:

"It has often been held that a search warrant authorizing the
search of certain premises covers automobiles found on those
premises. The assumption seems to be that a vehicle should be
viewed in the same way as any other personal effects found on the
described premises. [*Id.* at 667.]"

*        *        *

We agree with the above analysis and the overwhelming weight of
authority from other jurisdictions on this issue. Accordingly, we
hold that the search warrant issued in the present case for the
premises commonly referred to as 1620 N. Rose, City of
Kalamazoo, included within its authorization the search of the vehi-
cle found on the premises. [*Id.* at 135-139.]

The circuit court in *McGhee* concluded that *Jones* was factually distin-
guishable for the following reasons:

To this Court, the critical language in the *Jones* search warrant
was "any grounds," "appurtenant structures located on the prem-
ises" and "in control of the resident." The warrant in this case
[*McGhee*] did not contain any of those broad terms. This Court
finds that the warrant that allowed the officers to search the vehi-
cle in *Jones* was much broader than the language in this case. The
Court further notes that in *Jones*, the car that was searched was
parked in what was described as the backyard or behind the house,
in other words on the "grounds" or "premises." The car that was
searched in this case was parked in a detached garage of the
house.

Pontiac, County of Oakland, State of Michigan. Said build-
ing is a two story, single-family dwelling, red brick in color
with white trim. The numbers "18" are affixed to the front
of the dwelling. The dwelling is located on the east side of
Dakota and is located between Huron and Owego street, in
the City of Pontiac, State of Michigan.

The warrant authorized a search for marijuana; raw
materials, products equipment or drug paraphernalia
for the compounding, cutting, packaging, etc., of any
controlled substances; and documents and bills,
among other things. The affidavit alleged probable
cause that such evidence "is now located upon said
described premises."

As stated in the circuit court's opinion granting
defendant Tucker's motion to suppress:

> [The parties] stipulated that: the area at issue is within
> the curtilage of Defendant's residence; the area was open to
> view from a public area; the area was owned or controlled
> by Defendant; the area was enclosed by a four-foot high
> chain-link fence; the area was not posted with a "no tres-
> pass" sign; and the area had no obstructions to vision. The
> parties did not enter into stipulations as to the Defendant's
> subjective expectation of privacy, or as to whether the area
> was in fact frequented by neighbors or strangers. . . .
>
> The Court finds that the dog run area was within the cur-
> tilage, and was owned or controlled by Defendant. Given
> the presence of the dog and the fence, a reasonable infer-
> ence is that the area was not frequented by neighbors or
> strangers. While the area was open to view from a public
> area, and had no general obstructions to vision, the dog run
> was located in the backyard, and the Court finds that the
> presence of the dog and the fence, in particular, demon-
> strate Defendant's reasonable expectation of privacy in the
> area.
>
> Given this finding, and given that this area was not spe-
> cifically described in the search warrant, under *People v*

*Mackey,* 121 Mich App 748 [329 NW2d 476] (1982), the cocaine was obtained as a result of an illegal search.

The circuit court noted that various decisions of other states and federal decisions, which it discussed in its opinion, were "better-reasoned than Michigan's cases on the same issue," but concluded that it was "constrained to follow" *Mackey, supra.*

II

In *Mackey,* the police received information that marijuana was being grown and harvested in a cornfield. The search warrant described the property to be searched as "Section 1 in Bear Lake Township off County Road 600 * * * said property being leased or rented by Robert Mackey." *Mackey, supra* at 752. The police searched the cornfield and found marijuana, but also searched outbuildings. In one of these, a shed, the police broke a lock, entered, and found cut and bundled marijuana. This Court held that the marijuana seized from the shed was obtained illegally:

> Initially we find that the search warrant in this case, assuming *arguendo* that it is valid, does not authorize a search of the defendant's shed. The following description of the property to be searched was contained in the warrant: "Section 1 in Bear Lake Township off County Road 600 * * * said property being leased or rented by Robert Mackey." While it is recognized that rural property does not lend itself readily to precise description, *United States v Hassell,* 427 F2d 348 (CA 6, 1970), property that is within the curtilage of any dwelling house must be described with specificity in a search warrant to justify a search of that property. *People v Bawiec,* 228 Mich 32, 35; 199 NW 702 (1924). In *Bawiec,* police officers obtained a warrant to search the defendant's two-story frame house. They instead searched an old log house some 18 or 20 feet away from the house.

> The Supreme Court held that the search of the log house was impermissible as it was within the curtilage of defendant's dwelling house and was not specifically described in the warrant.
>
> In the instant case, the search warrant did not describe either the dwelling house or the shed. Because the shed is within the curtilage of defendant's dwelling house, defendant had an expectation of privacy under the Michigan Constitution. [*Mackey, supra* at 757.]

*Mackey* was decided in 1982 and is not binding on this Court, MCR 7.215(I)(1). In any event, *Mackey* is distinguishable in that all the facts submitted in *Mackey* supported the search of an open cornfield, and the warrant in *Mackey* made no mention of *any* buildings or structures. In contrast, the search warrant in Docket No. 239467 (McGhee) specifically mentioned the home as well as "storage areas" accessible therefrom of 483 Montana. The search warrant in Docket No. 239621 (Tucker) specifically mentioned the home as well as "spaces" accessible from 18 Dakota.

Because *Mackey* is distinguishable, the circuit courts were not required to grant defendants' motions to suppress.

We recognize that *People v Bawiec*, 228 Mich 32; 199 NW 702 (1924), a Michigan Supreme Court case on which *Mackey* relied, has not been overruled or challenged. *Bawiec* held that a search warrant authorizing only the search of a dwelling house, with no reference at all to outbuildings within the curtilage, does not justify the search of such outbuildings. *Bawiec, supra* at 35. However, we agree with the prosecution that the facts in *Bawiec* are distinguishable.

The affidavit in *Bawiec* described the place to be searched as:

"* * * a two-story frame house unpainted, partly shingled upon the sides, located on the north half of the northeast quarter of section five, * * * in the township of Krakow, in said county and State, and occupied by Joe Bawiec and John Bawiec, as a private dwelling and as a place for the manufacture, storage, sale, furnishing and giving away of intoxicating liquor." [*Id.* at 33.]

The *Bawiec* Court held that the search of a separate "log house some 18 or 20 feet away and disconnected from the frame house, but within the curtilage," exceeded the scope of the warrant:

In the instant case . . . the outbuildings were not included in the warrant which was the mandate *and the only mandate* to the officer. This mandate gave the authority to the officer to make the search and at the same time limited the scope of his authority. [*Id.* at 35 (emphasis added).]

Unlike the instant cases, the warrant in *Bawiec* expressly limited the scope of the search to a particular dwelling house; it did not include all "spaces" or "storage areas" accessible from the property address.

More fundamentally, the Michigan Supreme Court has held that Const 1963, "art 1, § 11, is to be construed to provide the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991). United States Courts of Appeals and state courts addressing the propriety of searches of outbuildings in the seventy-eight years since *Bawiec* was decided have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the resi-

dence.[4] It is thus to be anticipated that the Michigan Supreme Court would adopt a similar analysis, and, rather than follow *Bawiec*, declare that the protection provided by Const 1963, art 1, § 11 does not render the instant searches unconstitutional. See *Collins*, *supra* at 11, where the Court engaged in a similar analysis, leading it to overrule *People v Beavers*, 393 Mich 554; 227 NW2d 511 (1975).

In light of our disposition, we do not address the prosecution's remaining arguments.

---

[4] In *United States v Cannon*, 264 F3d 875, 880 (CA 9, 2001), the court noted:

This court, other circuits, and state courts have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence. [citing in a footnote *United States v Gorman*, 104 F3d 272, 274 (CA 9, 1996), *United States v McCaster*, 193 F3d 930, 932 (CA 8, 1999), *United States v Moore*, 743 F2d 254 (CA 5, 1984), *United States v Combs*, 468 F2d 1390 (CA 6, 1972), *Nebraska v Vicars*, 207 Neb 325; 299 NW2d 421 (1980), *State v Trapper*, 48 NC App 481; 269 SE2d 680 (1980), and *State v Stewart*, 129 Vt 175; 274 A2d 500 (1971).]

The United States Court of Appeals for the Tenth Circuit has held that outbuildings and vehicles within the curtilage of a residence are considered part of that residence for purposes of a search warrant, and has upheld searches of those buildings and vehicles even when not named in the warrant. See *United States v Earls*, 42 F3d 1321, 1327 (CA 10, 1994) (upholding search of detached garage, detached office and a shed, even though none named in warrant, where warrant authorized a search of the "premises known as 1601 N. Council, Oklahoma City, Oklahoma," and an attachment physically described the residence at the address), and *United States v Sturmoski*, 971 F2d 452, 458 (CA 10, 1992) (upholding search of vehicles within residence's curtilage even though not named in warrant). The United States Court of Appeals for the Fifth Circuit held in *Moore*, *supra*, that the search of a detached garage was within the scope of a warrant authorizing a search of "building, house or place" of the defendant's; and in *United States v Anderson*, 485 F2d 239 (CA 5, 1973), that a flower bed outside the house was part of the residence and subject to search.

CROSS-APPEAL IN DOCKET NO. 239647

Defendant McGhee argues on cross-appeal that the affidavit was insufficient to establish probable cause of criminal activity. We disagree.

Appellate scrutiny of a magistrate's determination that probable cause exists "requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *Russo, supra,* 439 Mich at 603. Regarding the degree of certainty that probable cause requires, "[t]he threshold inquiry looks at the life cycle of the evidence sought, given a totality of circumstances, that includes the criminal, the thing seized, the place to be searched, and, most significantly, the character of the criminal activities under investigation." *Id.* at 605, citing 2 LaFave, Search & Seizure (2d ed), § 3.7(a), pp 75-87.

Here, the affidavit reflected a prolonged investigation, and it was not apparent whether alternative investigative techniques were available to update the probability that the evidence was presently on the property. *Id.* Further, in light of (1) the large amounts of money exchanged, (2) the quantities involved, (3) the investigating officer's experience, and (4) the duration of the enterprise and testimony provided to the grand jury that implicated defendant McGhee, there was a fair probability that contraband would be found on the premises. Accordingly, we are satisfied that a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause. *Russo, supra* at 603.

Defendant McGhee also argues that the warrant was void on the basis of a lapse of time between the

events alleged in the affidavit and the execution of the warrant. We disagree. It has been generally stated that the facts giving rise to a warrant are sufficiently fresh when it can be presumed that the items sought remain on the premises, or that the criminal activity is continuing at the time of the warrant request. See *People v Siemieniec*, 368 Mich 405, 407; 118 NW2d 430 (1962).

> Time as a factor in the determination of probable cause to search is weighed and balanced in light of other variables in the equation, such as whether the crime is a single instance or an ongoing pattern of protracted violations, whether the inherent nature of a scheme suggests that it is probably continuing, and the nature of the property sought, that is, whether it is likely to be promptly disposed of or retained by the person committing the offense. [*Russo, supra* at 605-606.]

In *People v Sobczak-Obetts (After Remand)*, 253 Mich App 97, 108; 654 NW2d 337 (2002), this Court concluded that probable cause was established despite the fact that the affidavit supporting the search warrant did not contain any specific dates, where "the affidavit indicated that defendant and Obetts had engaged in their fraudulent activities for at least two years . . . ." *Id.* at 109.

We are satisfied that the information in the affidavit was sufficient for the magistrate to determine that there was a substantial basis for the finding of probable cause despite the omission of specific events regarding defendant McGhee.

We reverse in both cases, and affirm in defendant McGhee's cross-appeal.