# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

UNPUBLISHED
May 8, 2018

v

No. 337113
Oakland Circuit Court
LC No. 2016-257776-FH

DONALD WAYNE BARNES III,

Defendant-Appellee.

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

The prosecution appeals as of right the trial court's order quashing search warrants, suppressing physical evidence, and dismissing the charge against defendant, Donald Wayne Barnes III, with prejudice. Because we conclude that the warrants were supported by probable cause, we reverse and remand to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involved an investigation into illegal sales of marijuana at the Metro Detroit Compassion Club (MDCC), a Michigan nonprofit corporation whose stated purpose is to "provide a membership-based forum for compliance with the Michigan Medical Marihuana Act of 2008; to raise awareness about the safety and efficacy of medical marihuana; to encourage social networking among licensed patients, caregivers and members of the Corporation." Barnes is MDCC's registered agent.

In the spring of 2014, Detective Eric Buckberry of the Oakland County Narcotics Enforcement Team used a confidential informant (CI) to make four controlled buys at MDCC's facility located on Perry Drive in Waterford, Michigan. The CI was a licensed medical marijuana cardholder. He did not have a registered caregiver, and he had no prior relationship with any of the members of MDCC.

In November 2014, Detective Buckberry sought and obtained search warrants for three locations: MDCC at Perry Road (the Perry warrant), Barnes's home address on Meadowbrook Lane (the Meadowbrook warrant), and a warehouse facility on Brown Road (the Brown warrant). The affidavit in support of the Brown warrant relied on information discovered during the searches executed pursuant to the Perry and Meadowbrook warrants. Those searches turned

-1-

up documents connecting Barnes to the Brown Road facility. As a result of evidence seized during the execution of the warrants, the prosecution charged Barnes with one count of possession with intent to deliver a controlled substance, MCL 333.7401(2)(d)(*iii*) (marijuana less than 5 kilograms or fewer than 20 plants).

In October 2016, Barnes moved to quash the search warrants and suppress the evidence. The trial court granted Barnes's motion and dismissed the case with prejudice. The trial court found the Perry search warrant affidavit inadequate because it contained no evidence that Barnes owned or operated MDCC or that Barnes sold marijuana to the CI or was present at the time of the sale. The trial court noted that Barnes was the registered agent for MDCC but found no connection between Barnes's role as MDCC's registered agent and the daily operation of MDCC. The trial court also found the Meadowbrook search warrant affidavit insufficient because it made no connection between the illegal sales at MDCC and Barnes's house. The trial court determined that a registered agent would not have documents pertaining to the corporation at home. The trial court rejected the presence of a vehicle registered to Barnes at MDCC as a sufficient connection. Finally, the trial court declined to permit the use of evidence seized during the searches under the good-faith exception to the exclusionary rule because the affidavits were so lacking in probable cause that reliance on the affidavits and warrants was unreasonable.

## II. ANALYSIS

On appeal, the prosecution contends that the trial court erred by granting Barnes's motion to quash the search warrants and dismiss the case with prejudice. We agree. "We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). A finding is clearly erroneous "if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). "We review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *Hyde*, 285 Mich App at 436.

Both the United States and Michigan Constitutions guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "Probable cause to issue a search warrant exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 at 417-418 (citation and quotation marks omitted). "In Michigan, there is a presumption that an affidavit supporting a search warrant is valid." *People v Mullen*, 282 Mich App 14, 23; 762 NW2d 170 (2008). The "preference for warrants . . . requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992) (citations and quotation marks omitted).

The United States Supreme Court applied the "totality-of-the-circumstances approach" to after-the-fact judicial review of a magistrate's probable cause determination. *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). Reviewing courts should afford "great deference" to a magistrate's probable cause determination and should not interpret warrant affidavits "in a hypertechnical, rather than a commonsense, manner." *Id*. at 236 (citation and

quotation marks omitted). "Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *Russo*, 439 Mich at 604, quoting *Gates*, 462 US at 238.

In this case, the trial court failed to give deference to the magistrate's decisions and did not take into consideration the totality of the circumstances described in the warrants' affidavits. The trial court's focus on Barnes's relationship to MDCC was misplaced. "The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended." *People v McGhee*, 255 Mich App 623, 626; 662 NW2d 777 (2003) (citation and quotation marks omitted). A search warrant authorizes a search of a particular place for suspected criminal activity, and that place's connection to a particular person is not important. Likewise, with regard to the Perry warrant, it is irrelevant that the affidavit does not name Barnes as the one who sold drugs to the CI. Whether probable cause existed to search the MDCC facility for evidence of suspected illegal drug sales had nothing to do with Barnes.

Regarding the Meadowbrook warrant to search Barnes's residence, Detective Buckberry averred that, in his experience as a narcotics officer, drug traffickers often keep records on laptops, flash drives, and other electronic media and that those types of records may be found at the Meadowbrook address. Barnes is the registered agent for MDCC. In addition, Barnes's vehicle was frequently seen parked outside MDCC. Under the totality of these circumstances, a reasonably cautious person could conclude that evidence relevant to the investigation into illegal drug sales at MDCC could be found in Barnes's home.

With regard to the Brown warrant, Detective Buckberry testified that business cards and paperwork for the Brown Road warehouse were discovered at the first two locations being searched. Detective Buckberry stated that the investigators suspected there was another facility because there were no marijuana plants growing at Perry Road. In the context of an investigation into illegal marijuana sales at MDCC, it would be reasonable for investigators to suspect that evidence of a crime could be found at the Brown Road location. Paperwork indicating the existence of the facility was discovered at both the Perry Road location and at Barnes's house. In addition, a vehicle registered to Barnes was seen parked at the Brown Road location. Using common sense, a reasonably cautious person could find a connection among Barnes, the Brown Road facility, and MDCC's operations.

Barnes argues that his role as MDCC's registered agent does not show his involvement in the day-to-day operations of MDCC because a registered agent is merely a person authorized to receive service of process for a corporation. This argument is the type of overly technical scrutiny cautioned against in *Gates*. The frequent presence of Barnes's vehicle suggests that Barnes himself was frequently present at MDCC. Therefore, his role as MDCC's registered agent was not solely ministerial, and that role was not the sole basis for the warrants. This combination of facts supports probable cause to connect Barnes to MDCC.

Barnes maintains that only one of his seven vehicles was seen at MDCC but was never seen at his home, nor was Barnes himself seen at MDCC or at his home. Moreover, Barnes

contends, the presence of his vehicle at MDCC does not connect him to evidence of illegal sales of marijuana made by an unknown employee of the club. Barnes again improperly separates and dismantles each detail standing alone. The totality of the circumstances connects Barnes to a vehicle registered to him that was frequently parked at MDCC where a CI confirmed the illegal sale of marijuana.[1]

Barnes contends that Detective Buckberry's observation of the CI's entry into and exit from MDCC were insufficient to show that the CI got marijuana at MDCC. Barnes fails to account for Detective Buckberry's full description of the CI's buys. First, Detective Buckberry searched the CI before and after the controlled buys. Officers followed the CI to MDCC the first time, and Detective Buckberry personally drove the CI to MDCC the second, third, and fourth time. Each time, the CI gave Detective Buckberry the marijuana he received after he came out of MDCC. Not only did Detective Buckberry watch the CI enter and exit the building, Detective Buckberry monitored the CI to ensure that he received the marijuana only from MDCC. The CI's entry into MDCC without marijuana and exit from MDCC with marijuana gives rise to a fair probability that the CI obtained marijuana at MDCC.

Similarly, Barnes argues that Detective Buckberry's description of the controlled buys states that the CI had no marijuana when he came out of MDCC. This argument isolates and misinterprets one sentence of the affidavit. Detective Buckberry first stated that he searched the CI "before and after the controlled purchases for money and drugs with negative results." Reading this statement in conjunction with the subsequent five sentences, however, it is clear that Detective Buckberry provided the CI with funds before the buy and received marijuana from the CI after the buy. Accordingly, the full description of the controlled buys in the affidavit leaves a reasonably cautious person using common sense with the assurance that the CI bought marijuana at MDCC.[2]

Barnes challenges the characterization of the CI's participation as "voluntary" because Detective Buckberry testified that the CI cooperated with the police in exchange for lesser charges. A quid pro quo arrangement is not incompatible with voluntary participation; incentive is not coercion. In addition, the affidavit noted that the CI admitted to prior illegal drug purchases. Furthermore, it does not undermine Detective Buckberry's observation that the CI obtained marijuana at MDCC despite not being a registered patient.

Barnes argues that the controlled buys carried out by the CI did not support probable cause because the transactions between the CI and MDCC were legal under the Michigan

---

[1] Because of this connection, we reject Barnes's argument that Detective Buckberry's experience in investigating drug trafficking was irrelevant. Likewise, the listing of all of Barnes's registered vehicles was not irrelevant because it shows that Detective Buckberry looked into the vehicles registered to Barnes before connecting a vehicle seen at MDCC with Barnes.

[2] Because the CI exchanged money for marijuana at MDCC, it is not clear why the affidavit's characterization of MDCC as a "business" rather than a "nonprofit corporation" was so misleading as to undermine the magistrate's finding of probable cause.

Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* Barnes contends that members of MDCC were permitted to engage in "donation compensation transactions" with the CI, who was a medical marijuana cardholder. Section 4 of the MMMA contradicts Barnes's position. Section 4 requires a primary caregiver and a qualifying patient to be connected through the state's registration process. See MCL 333.26424(b). The warrant affidavit alleges "[t]hat the confidential informant is a Michigan medical marijuana patient card holder, who has no caregiver." That is, the CI was not connected to anyone as a caregiver through the proper registration process. Even if the person who assisted the CI at MDCC was a "primary caregiver" under the MMMA, that person was not the CI's registered primary caregiver.

Barnes asserts that the CI signed up to become a member of MDCC. Under § 4 of the MMMA, whether the CI became a member of MDCC is irrelevant. "Section 4 provides a broad grant of immunity from criminal prosecution and civil penalties to registered qualifying patients and connected primary caregivers." *People v Hartwick*, 498 Mich 192, 215; 870 NW2d 37 (2015). Thus, for the person assisting a qualifying patient to claim immunity under § 4, that person must be connected to the qualifying patient through the state registration process.[3] Barnes does not assert or provide proof that the CI was connected to anyone at MDCC in that manner. For these reasons, we hold that the trial court erred by granting Barnes's motion to quash the search warrants and suppress the evidence against Barnes.[4] Because the warrants were supported by probable cause, we need not address whether the good-faith exception to the exclusionary rule applies. See *People v Goldston*, 470 Mich 523, 526; 682 NW2d 479 (2004).

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Peter D. O'Connell

---

[3] Similarly, to the extent that Barnes argues that the transactions were legal under § 8, MCL 333.26428, this Court has held that a defendant may not raise a § 8 defense in a prosecution for "transactions involving marijuana that do not involve the defendant's own *primary* caregiver[.]" *People v Bylsma*, 315 Mich App 363, 384; 889 NW2d 729 (2016).

[4] Barnes requested a hearing pursuant to *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978), asserting that Detective Buckberry's affidavits contained deliberate falsehoods or reckless disregard for the truth, but the trial court did not rule on that request. Barnes's motion to quash in the trial court is not accompanied by affidavits or an offer of proof supporting his allegations of falsehood or reckless disregard for the truth. Accordingly, it would have been proper for the trial court to deny the *Franks* hearing. See *People v Franklin*, 500 Mich 92, 103; 894 NW2d 561 (2017). However, because the trial court quashed the search warrants and did not reach the issue of whether Barnes was entitled to a *Franks* hearing, the trial court may, at its discretion, allow Barnes to renew his request for a *Franks* hearing on remand.