*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

BRIGITTE LOUISE DEROUSSE,

        Defendant-Appellee.

FOR PUBLICATION
May 5, 2022

No. 358358
Jackson Circuit Court
LC No. 19-004435-FH

Before: BOONSTRA, P.J., and M. J. KELLY and SWARTZLE, JJ.

BOONSTRA, P.J. (*concurring part and dissenting in part*).

I fully concur in Part II.B.1. of the majority opinion. I agree that defendant Brigitte DeRousse had a reasonable expectation of privacy in the barns located on her property (even if outside the curtilage of the home), and that a warrant was therefore required to search the barns. I respectfully dissent from Part II.B.2. and 3., however, for the reasons that follow.

First, I fully recognize that the parties have stipulated that the barns in question are located outside the curtilage of DeRousse's home. So that issue is technically not before us. But I think the reason it is not before us has nothing to do with factual realities, but rather is simply because both the prosecution and DeRousse have taken post-hoc legal positions designed to further their respective legal arguments. That is, the prosecution wanted to advance the argument—which we are rejecting—that a warrant is not required to search a building outside the curtilage of a home. And DeRousse wanted to advance the argument that this particular warrant was deficient because it did not specify the barns (whereas it arguably may have been sufficient with respect to barns located within the curtilage of her home).

The majority and I therefore agree that a warrant was required to search the barns regardless of whether the barns were located within the curtilage of the DeRousse home. However, the curtilage issue may affect whether this particular warrant was sufficient to allow for the search of the barns. Therefore, I believe that a proper method of analysis—devoid of stipulations arising from legal maneuvering—would be to evaluate whether, as a factual matter, these barns were located with the curtilage of the DeRousse home. The constitutional protection of the Fourth Amendment extends to the curtilage of a home. See *Florida v Jardines*, 569 US 1, 6-7; 133 S Ct 1409; 185 L Ed 2d 495 (2013). Four factors should be considered in determining whether an area

lies within the curtilage of a home including: (1) the proximity of the area to the home, (2) whether the area is included in an enclosure surrounding the home, (3) the natures of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation. *United States v Dunn*, 480 US 294, 301; 107 S Ct 1134; 94 L Ed 2d 326 (1987).

As the majority notes, this Court held in *People v McGhee*, 255 Mich App 623, 626; 662 NW2d 777 (2003):

> The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended. *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925); *United States v Gahagan*, 865 F2d 1490, 1496 (CA 6, 1989). The Fourth Amendment safeguard is designed to require a description that particularly points to a definitely ascertainable place so as to exclude all others. *Id*. Thus, the test for determining the sufficiency of the description of the place to be searched is (1) whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premises might be mistakenly searched. *Id*. at 1496-1497. The requirement is designed to avoid the risk of the wrong property being searched or seized. [Quotation marks and citation omitted.]

And while the majority understandably feels compelled to apply our Supreme Court's dated-butnever-overturned decision in *People v Bawiec*, 228 Mich 32; 199 NW2d 702 (1924) (holding that a search warrant for a specified residence was insufficient to authorize the search of a separate log home located with the curtilage), this Court in *McGhee* recognized that our Supreme Court likely would decide the issue differently today, given developments in Fourth Amendment law over the last eighty (now nearly one hundred) years. This Court stated:

> [T]the Michigan Supreme Court has held that Const 1963, "art. 1, § 11, is to be construed to provide the same protection as that secured by the Fourth Amendment, absent 'compelling reason' to impose a different interpretation." *People v. Collins,* 438 Mich. 8, 25, 475 N.W.2d 684 (1991). United States Courts of Appeals and state courts addressing the propriety of searches of outbuildings in the seventy-eight years since *Bawiec* was decided have held that the Fourth Amendment is not violated by a search of the grounds or outbuildings within a residence's curtilage where a warrant authorizes a search of the residence. It is thus to be anticipated that the Michigan Supreme Court would adopt a similar analysis, and, rather than follow *Bawiec,* declare that the protection provided by Const. 1963, art. 1, § 11 does not render the instant searches unconstitutional. See *Collins, supra* at 11, 475 N.W.2d 684, where the Court engaged in a similar analysis, leading it to overrule *People v. Beavers,* 393 Mich. 554, 227 N.W.2d 511 (1975). [*McGhee*, 255 Mich App at 633-634 (footnote omitted).]

Whether the barns are within the curtilage of DeRousse's home is therefore an important factor in assessing whether the warrant at issue in this case was sufficient to allow for the search of the barns. Indeed, the majority recognizes as much, acknowledging that the changes in Fourth Amendment jurisprudence noted in *McGhee* would not necessarily resolve the issue on appeal, because parties in this case had stipulated that the barns are located outside the curtilage of DeRousse's home.

This leads me to a careful inspection of the actual warrant in this case—as well as of the factual realities of the resulting search. The warrant states:

> 1. The person, place or thing to be searched is described as and is located at:
>
> 12505 Dearmyer Road, in Columbia Township, it is a one story single-family dwelling. The residence is a single story ranch tan in color with vinyl siding. The residence is occupied with a brown shingled roof. The front door of the residence faces south and the numbers 12505 are on the front of the house. The residence is located in Columbia Township, Jackson County and State of Michigan.
>
> 2. The PROPERTY is to be searched due to animals running at large and several dead animals found on the property. Property to be seized is specifically described as:
>
> A total of two silver labs, a chocolate lab, a French Bull Dog and a Tea Cup Chihuahua, 9 cows and 3 sheep. Items relates to rabies vaccines administered by animal owner.

Indisputably, the warrant was not a model of clarity and its ambiguity is not what is desired in a warrant. It provided the property address (which arguably could include the residence, the barns, and open spaces), but also described it as a "one story single-family dwelling." It did not specify the barns as areas to be searched. However, the warrant also—and arguably more broadly— referred to "The PROPERTY [that] is to be searched" and gave as a basis for the search "animals running at large and several dead animals found *on the property*." (Emphasis added). The dead animals had not been found inside the residence, however, and the animals running at large also were not doing so in the residence. In this respect, the warrant's language suggests that the drafter intended for the search to be of an area broader than simply the residence. And many of the animals specified for seizure were of a type—cows and sheep—that would not typically be expected to be found within a residence, but instead would be expected to be found either in open spaces or inside the barns. The affidavit also mentioned—as a basis for the warrant—that there was a dog kennel being operated out of one of the barns.

I am left to conclude that the warrant, while ambiguous, may have been sufficient to allow for a search of the barns in this factual circumstance, or at least may have given rise to a good faith belief that the barns were included within the area that could permissibly be searched. As the majority notes, our Supreme Court, in *People v Goldston*, 470 Mich 523, 529; 682 NW2d 479 (2004), adopted a good-faith exception to the exclusionary rule. Noting that the exclusionary rule is designed to deter "official misconduct by removing incentives to engage in unreasonable searches and seizures," *id*. at 529, the Court held that "suppressing evidence obtained in objectively

reasonable reliance on a subsequently invalidated warrant" produces "marginal or nonexistent benefits" and "cannot justify the substantial costs of exclusion." *Id.* at 530, quoting *United States v Leon*, 468 US 897, 922; 104 S Ct 3405, 3420; 82 L Ed 2d 677 (1984). See also *People v Hughes* (*On Remand*), ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 338030); slip op at 7 (noting that in cases where an "unlawful search" is "not attributable to an error made by a neutral and detached magistrate, the rationale underlying the good-faith exception does not apply").

Under these circumstances, in which the warrant ambiguously described the property to be searched and in which the reasons for the search related in part to the mistreatment of farm animals that would not be expected to be found within a residence, I would remand this matter for further proceedings regarding the scope of the warrant and the applicability of the good faith exception to the warrant requirement—including whether suppressing the evidence serves the purposes of the exclusionary rule in this instance.

/s/ Mark T. Boonstra