*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 12, 2024

Plaintiff-Appellee,

v

No. 365353
Alpena Circuit Court
LC No. 22-001619-FH

STEVEN WYMAN,

Defendant-Appellant.

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of possession with intent to deliver more than 50 grams but less than 450 grams of cocaine for which he was sentenced to 160 to 480 months' imprisonment. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a December 26, 2021 traffic stop involving defendant. Earlier, the Presque Isle County Sheriff's Office received a tip regarding cocaine distribution in Alpena involving a Chevrolet Tahoe owned by an individual named Mike Anderson. On the day of the traffic stop, the Tahoe was observed traveling west from Alpena, stopping for 20 minutes, then returning. Officers pulled over the Tahoe after observing it traveling over the speed limit. Defendant was operating the Tahoe, and consented to a search of the vehicle, which revealed it contained more than 175 grams of cocaine in a gift bag behind the driver's seat. In addition, officers recovered $620 in cash and defendant's cell phone, which was later searched after obtaining a search warrant.

Text messages from the cell phone, which were between defendant and other individuals known to law enforcement to be involved in the drug trade, were introduced at trial in an effort by the prosecutor to establish that defendant possessed the cocaine with the intent to sell it. Defendant moved to suppress the text messages on the basis that the warrant affidavit lacked probable cause and that the text messages were irrelevant. The trial court denied the motion, and defendant was subsequently convicted of possession with intent to deliver more than 50 grams but less than 450

grams of cocaine, MCL 333.7401(2)(a)(*iii*).  Defendant was sentenced as previously noted, and this appeal followed.

## II. SEARCH AND SEIZURE

Defendant first argues that his cellular telephone was illegally searched and the text messages found should have been suppressed because the search warrant failed to establish probable cause because it only gave generalized facts about defendant's arrest and failed the particularity requirement.  We disagree.

### A.  STANDARDS OF REVIEW

"A trial court's ruling on a motion to suppress evidence is reviewed for clear error, but its conclusions of law are reviewed de novo." *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts."  *Id*. (quotation marks and citations omitted).  In reviewing a magistrate's determination whether probable cause was established to support a search warrant, this Court should ask "only whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause."  *Id*. at 243-244 (quotation marks and citation omitted).  The trial court's factual findings are reviewed for clear error.  *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014).  "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made."  *Id*. (quotation marks and citation omitted).

In the trial court, defendant argued that the text messages should have been suppressed because the warrant application lacked probable cause; however, defendant did not raise arguments regarding particularity.  Those claims are, therefore, unpreserved.  See *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).  Unpreserved claims of constitutional error are reviewed for plain error.  *Id*.  "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."  *Id*. at 763.  "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings."  *Id*.

### B.  PROBABLE CAUSE

Both Article 1, § 11, of Michigan's 1963 Constitution and the US Const, Am IV, protect against unreasonable searches and seizures.  Const 1963, art 1, § 11; US Const, Am IV.[1]  "A search

---

[1] Under the Fourth Amendment of the United States Constitution, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Article 1, section 11 of the 1963 Michigan Constitution states: "The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or

for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy." *People v Mahdi*, 317 Mich App 446, 457-458; 894 NW2d 732 (2016) (quotation marks and citation omitted). "A search warrant may only be issued upon a showing of probable cause," which "exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the stated place." *Unger*, 278 Mich App at 244. "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched." *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001). To determine whether there was a substantial basis for a magistrate to find probable cause when a search warrant is requested, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Mullen*, 282 Mich App 14, 22; 762 NW2d 170 (2008) (quotation marks and citation omitted). An affidavit supporting a search warrant is presumed valid. *Id*. at 23.

Here, defendant was arrested following a traffic stop where police discovered more than 175 grams of cocaine and $620 cash in small denominations on his person. The narcotics team had been investigating Mike Anderson, defendant's associate, for drug trafficking and had previously been permitted to place a tracking device on the Chevrolet Tahoe that defendant borrowed from Anderson. Law enforcement saw the vehicle travel a long distance from Alpena to the Cadillac area, make a 20-minute stop, and immediately return to Alpena. Defendant lied to police about his whereabouts before consenting to the search that led to the discovery of the cocaine.

Trooper Michael Oliver, a member of the narcotics team, subsequently completed an affidavit for a search warrant, requesting access to defendant's cellular telephone, seeking:

> Any and all records or evidence indicating or related to the trafficking of narcotics, to include any other device stored in the cellular telephones listed above. Facebook messages, Instagram messages, or contacts, Internet postings or conversations, journals, notes, digital images and videos, and/or any other forms of electronic or digital telephone content which may be stored on or accessed from the memory of the cellphone listed above.

Trooper Oliver made these requests based on his knowledge, training, and experience that individuals engaged in drug trafficking communicate with associates through text massages, phone calls, and social media messaging; that location information would likely contain additional information on the manufacture or distribution of narcotics in the area; and that one of the best ways to establish an association between two people is by searching a person's phone for contacts, photographs, and other connections. The affidavit also sought information related to "GPS location, financial information, cookies, bookmarks, Web history, search terms and Internet history, photos/videos, [and] communications . . . ."

---

electronic communications shall issue without describing them, nor without probable cause supported by oath or affirmation."

-3-

"[R]easonableness is always the touchstone of Fourth Amendment analysis." *People v Hughes*, 506 Mich 512, 524; 958 NW2d 98 (2020) (quotation marks and citation omitted). In this case, the affidavit for search warrant established probable cause that defendant's cellular telephone would contain relevant evidence related to his intent to sell the cocaine. It was reasonable for Trooper Oliver to believe that defendant's telephone would contain communications concerning how the drugs would be sold given his experience investigating drug transactions. See *Ulman*, 244 Mich App 509 (stating that a police officer's experience is relevant to the establishment of probable cause). Specifically, the affidavit noted that in Trooper Oliver's "training and experience, associates communicate together via phone calls, text messages, emails, and social network posts," and that "[t]hese communications often contain direct and indirect statements about crimes." The investigation also showed that defendant, who did not own the vehicle, traveled for multiple hours, made a brief stop, and then began his return with what turned out to be a significant amount of cocaine and cash. It was, therefore, reasonable for Trooper Oliver to believe that defendant would have communications related to this trip on his telephone. Thus, the affidavit supplied sufficient probable cause to support the issuance of the warrant, and the trial court did not clearly err when it denied defendant's motion to suppress on the basis of lack of probable cause.

## C. PARTICULARITY

A search warrant also must describe with particularity the place to be searched and the persons or things to be seized. *People v DeRousse*, 341 Mich App 447, 462; 991 NW2d 596 (2022).

> The test for determining whether the description in the warrant is sufficient to satisfy the particularity requirement is whether the description is such that the officers with a search warrant can with reasonable effort ascertain and identify the place intended. The Fourth Amendment safeguard is designed to require a description that particularly points to a definitely ascertainable place so as to exclude all others. Thus, the test for determining the sufficiency of the description of the place to be searched is (1) whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premises might be mistakenly searched. The requirement is designed to avoid the risk of the wrong property being searched or seized. [*People v McGhee*, 255 Mich App 623, 626; 662 NW2d 777 (2003) (quotation marks and citations omitted).]

"In the context of cell phone data . . . allowing a search of an entire device for evidence of a crime based upon the possibility that evidence of the crime could be found anywhere on the phone and that the incriminating data could be hidden or manipulated would render the warrant a general warrant[.]" *People v Carson*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 355925); slip op at 11 (quotation marks and citation omitted).

As noted above, the affidavit for search warrant sought "[a]ny and all records or evidence indicating or related to the trafficking of narcotics" located on "any [] forms of electronic or digital telephone content which may be stored on or accessed from the memory of the cellphone . . . ." In other words, this was a general warrant that allowed law enforcement to search every corner of

defendant's cellular telephone device. See *id*. at ___; slip op at 12 (stating the warrant failed for particularity because it "did not place any limitations on the permissible scope of the search of defendant's phone"). Because the affidavit for search warrant gave law enforcement unfettered access to defendant's cellular telephone in the hopes of finding some communication to establish his intent to sell narcotics, it failed to satisfy the particularity requirement. See *id*. at ___; slip op at 13-14.

Defendant, however, has failed to show that the trial court committed plain error when it denied his motion to suppress on the basis of lack of particularity, which requires that he show that but for the trial court's plain error, the result would have been different. See *Carines*, 460 Mich at 763-764. Without the search of the phone, the only evidence that would have not been admitted would have been the text message communications between defendant and his associates. For example, in one series of messages between defendant and an individual named "Cabuix," the following exchange took place on December 12, 2021:

- 1:46 p.m. from Cabuix: "How things looking";

- 3:26 p.m. from defendant: "Slow as S*** Christmas N all";

- 3:26 p.m. from defendant: "Haven't heard from him yet";

- 4:02 p.m. from Cabuix: "He said the same thing";

- 4:02 p.m. from Cabuix: "Are you close I was thinking about coming over that way";

- 4:05 p.m. from defendant: "Not even half gone."

In another example, on December 24, 2021, defendant and "Big Mike" had the following exchange:

- 8:24 p.m. from Big Mike: "Go for a ride Sunday?";

- 9:33 p.m. from defendant: "Across";

- 9:33 p.m. from Big Mike: "Ya";

- 9:33 p.m. from defendant: "Kkk";

- 9:33 p.m. from Big Mike: "Only half way maybe."

Lastly, the following exchange between defendant and Cabuix on December 26 and December 26, 2021:

- 10:26 p.m. from Cabuix: "You coming tomorrow";

- 10:27 p.m. from Cabuix: "Mike said something about tomorrow";

- 5:26 a.m. from defendant: "Be leaving in a half hour."

Plainly, the *intended* relevance of the text messages was to show the defendant's communications regarding the cocaine with his associates in the days leading to his arrest. The communications, however, are ambiguous as to what the individuals were discussing. Indeed, at trial, Detective Trevor Bullock admitted that the messages could have related to topics other than cocaine. Accordingly, it is not clear what weight the jury gave the probative value of the text messages. As was demonstrated at trial, defendant was found with over 175 grams of cocaine and cash in a shopping bag after driving for hours, stopping briefly, and returning toward his origin. Thus, absent the text messages, we are not convinced that the jury would have found defendant not guilty. Accordingly, defendant has not shown that the trial court plainly erred when it denied his motion to quash.

## III. IMPROPER TESTIMONY

Next, defendant argues that the trial court plainly erred when it admitted Trooper Tom Dihle's testimony regarding whether defendant was lying when he said he was unaware of anything in the vehicle the trooper should be aware of. According to defendant, this was improper opinion testimony that deprived him of his constitutional right to a fair trial. We disagree.

### A. STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019) (citation omitted). Defendant did not object to Trooper Dihle's testimony; therefore, this issue is not preserved. See *Carines*, 460 Mich at 764. Unpreserved issues are reviewed for plain error affecting substantial rights. *Id*. at 763.

### B. ANALYSIS

Under MRE 701[2], a lay witness may give opinion testimony if it is rationally based on the witness's perception and helpful to clearly understand the witness's testimony or to determining a fact in issue. Police officers are included as lay witnesses when not testifying as an expert. *People v Fomby*, 300 Mich App 46, 50; 831 NW2d 887 (2013). While a witness may not express an opinion on a defendant's guilt or innocence of the charged matter, *id*. at 53, police officers may testify concerning their opinions while explaining the steps of their investigation based on their personal perceptions. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Under the doctrine of fair response, a party is entitled to fairly respond to issues raised by the other party. *People v Jones*, 468 Mich 345, 352 n 6; 662 NW2d 376 (2003).

Here, Trooper Dihle was not testifying as an expert witness. He was testifying to the steps of his investigation and traffic stop of defendant. After pulling defendant over and asking for his driver's license, Trooper Dihle asked defendant where he was coming from. Defendant lied,

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. This opinion relies on the version of MRE 701 in effect at the time this matter was decided by the trial court. The amended rule does not differ substantively from the rule cited in this opinion.

providing an alternate location than the one the trooper knew to be correct. Trooper Dihle then asked defendant if he could search his vehicle and was told he could. Before conducting the search, Trooper Dihle asked defendant whether there was anything in the vehicle that he should be made aware of, to which defendant replied "no, not that I know of." Trooper Dihle testified that he developed reasonable suspicion that defendant was lying to him based on his previous lie about where defendant was coming from. Trooper Dihle also explained that his question about whether there was anything he should be aware of is a routine question designed to keep both him and others safe. His testimony, that he believed defendant was lying to him, was based on his perception and was helpful in understanding his testimony regarding the steps of the investigation. Trooper Dihle was not opining on defendant's guilt or innocence on the charged matter, rather, he was providing his perception of defendant while performing a traffic stop. Trooper Dihle made no statements concerning whether he believed defendant was guilty of drug trafficking.

Trooper Dihle also testified that he finds illegal things while conducting consent searches "all the time." He estimated that more than 60% of the time he asks for consent to search something, he finds illegal contraband. This too, was not improper testimony. Trooper Dihle was testifying as to his perception and experience to help the jury understand his investigation. He was not stating that defendant was guilty or innocent of the charged crime. Trooper Dihle's comments were also proper under the doctrine of fair response. See *Jones*, 468 Mich at 352 n 6. Defendant's defense theory was that he knew nothing about the cocaine found in his vehicle. To support this claim, defense counsel argued in his opening statement that defendant would not have consented to a search of the vehicle had he known about the cocaine. Defendant also testified regarding this theory, stating he agreed to the search because he had nothing to hide. A party is entitled to fairly respond to an issue raised by the opposing party, which is exactly what the prosecution did. *Id*. Therefore, because Trooper Dihle's statements did not amount to improper opinion testimony, the trial court did not plainly err when it admitted the statements.[3]

## IV. RESENTENCING

Lastly, defendant argues he is entitled to resentencing because his sentence is disproportionate and unreasonable due to his advanced age and poor health. We disagree.

### A. STANDARDS OF REVIEW

All sentences must be reviewed for reasonableness. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). "This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Foster*, 319 Mich App 365, 375; 901 NW2d 127 (2017). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality, which requires that the sentence be proportional to the seriousness of the circumstances

---

[3] Defendant also argues that his trial counsel was constitutionally ineffective for failing to object to Trooper Dihle's testimony. Because trial counsel is not ineffective for failing to advocate for a meritless position, *People v Payne*, 285 Mich App 181, 191; 774 NW2d 714 (2009), defendant has failed to show he is entitled to relief on the basis of ineffective assistance of counsel.

surrounding the offense and offender." *People v Lowery*, 258 Mich App 167, 172; 673 NW2d 107 (2003).

## B. ANALYSIS

Legislative sentencing guidelines are advisory in all applications. *Posey*, 512 Mich at 348. However, while the sentencing guidelines are no longer mandatory, within-guideline sentences are to receive a presumption of proportionality. *Id*. at 359. To overcome this presumption, a defendant must present unusual circumstances that show the sentence is disproportionate. *People v Burkett*, 337 Mich App 631, 637; 976 NW2d 864 (2021). The defendant bears the burden of showing that his or her sentence is disproportionate. *Posey*, 512 Mich at 359.

To determine whether a sentence is disproportionate, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *People v Steanhouse*, 500 Mich 453, 475; 902 NW2d 327 (2017) (quotation marks and citation omitted). The purpose of sentencing guidelines is to facilitate proportionate sentences. *People v Smith*, 482 Mich 292, 293; 754 NW2d 284 (2008). The sentencing guidelines consider the severity level of an offense and consider the defendant's criminal history. *People v Babcock*, 469 Mich 247, 263-264; 666 NW2d 231 (2003). Points to consider when determining whether a sentence is proportionate include reformation, protection of society, punishment, and deterrence of others. *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

Although defendant was 63 years old when he was sentenced and has a heart condition, this Court has held that a defendant's advanced age is not sufficient to overcome the presumption of a proportionate sentence. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). In the same manner, a defendant's poor health is also not sufficient to overcome the presumption of a proportionate sentence. A 160-month minimum sentence for possession with intent to deliver more than 50 grams but less than 450 grams of cocaine, under MCL 333.7401(2)(a)(*iii*), was not otherwise disproportionate. Defendant was caught with a large amount of cocaine, estimated to be worth more than $17,500. Although the prosecutor asked for an enhanced sentence to protect the community from drug traffickers, the trial court declined to enhance defendant's minimum sentence, but considered defendant's age, health, and criminal record in its sentencing decision. The trial court heard from defendant that he was elderly and had heart problems, had turned his life around, and refused a deal from the state because he was innocent. The court acknowledged his argument, but stated it was sentencing defendant to the top of his guidelines range because of the sheer amount of cocaine he was transporting, his prior criminal history, and that the jury found him guilty of committing the charged crime. The trial court properly considered the *Snow* factors, and relied heavily on the final two factors of protecting the community and deterrence of others in delivering defendant's sentence. Specifically, the trial court noted the large amount of cocaine defendant was convicted of possessing, from which the community needed to be protected.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

-8-